**Ramona VEGA, Plaintiff-Appellant,**

v.

**Patricia Roberts HARRIS, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 80–6115.**

United States Court of Appeals, Second Circuit.

Argued Oct. 30, 1980.

Decided Jan. 2, 1981.

Alan H. Kleinman, New York City (Charles J. Tuohy, Bronx Legal Services, New York City, on the brief), for plaintiff-appellant.

Stuart M. Bernstein, Asst. U. S. Atty., New York City (John S. Martin, Jr., U. S. Atty., for the Southern District of New York, Peter C. Salerno, Asst. U. S. Atty., New York City, on the brief), for defendant-appellee.

Before FRIENDLY, MANSFIELD, and OAKES, Circuit Judges.

PER CURIAM:

This is an appeal by Ramona Vega from a judgment on the pleadings, Fed.R.Civ.P. 12(c), by the United States District Court for the Southern District of New York, Lee P. Gagliardi, Judge, upholding the denial of Vega's application for Social Security and Supplemental Security Income (SSI) disability benefits. The Department of Health and Human Services [1] had determined that, taking into account vocational as well as medical factors, Vega was not disabled under the Social Security Act and the regulations promulgated thereunder. We reverse and direct the district court to remand the

---

1. At the time of the Secretary's final decision, it was the Department of Health, Education, and Welfare.

case for further consideration in light of new regulations issued in 1978 governing disability determinations.

## BACKGROUND

Vega applied for benefits on May 5, 1977, claiming that she was disabled by bronchial asthma. After both her initial application and her request for reconsideration had been denied, a hearing was held on May 4, 1978. It was conducted in Spanish and English, with the aid of an interpreter, and included the testimony of a vocational expert. Vega presented evidence showing that she suffered from bronchial asthma and a number of other ailments, such as hypertension, osteoarthritis, and anemia. As the Secretary concedes, Vega demonstrated that she could not perform her former work. Brief for Defendant-Appellee at 10–11. The Secretary, therefore, had the burden of proving Vega's capacity to perform other work. The administrative law judge (ALJ), accepting Vega's medical evidence but largely rejecting her subjective claims of pain,[2] found that she was not suffering from a "listed impairment," or the medical equivalent of one, and thus was not automatically deemed disabled under the regulations, see 20 C.F.R. §§ 404.-1503(d), 416.903(d) (1980). Considering vocational as well as medical factors, the ALJ

further determined that Vega retained a residual capacity to engage in light and sedentary activity and that jobs existed in the economy that she could perform.

The Social Security Administration's (SSA's) Appeals Council on June 28, 1978, approved the ALJ's unfavorable decision. In July 1978 Vega submitted a psychiatric evaluation to the Appeals Council, and in September of that year the Council decided that the evidence that she was suffering from severe depression did not provide a basis for vacating its previous action.[3] The district court below held that there was substantial evidence to support the Secretary's determination and that Vega had not been denied a fair hearing. On appeal, Vega argues that the ALJ failed to consider properly her complaints of pain, i. e., the ALJ made a lay medical judgment outside the ALJ's area of expertise, and failed to develop evidence of a psychiatric impairment; that the Appeals Council erred in failing to reopen her case; and that the Secretary's new regulations mandate a finding of disability.

## DISCUSSION

Since the late 1950s when Congress established disability benefits, SSA in developing a regulatory scheme for making disability

---

2. Although we accept the ALJ's conclusion that Vega's pain in combination with her other ailments did not prevent her from performing light, sedentary physical tasks, it is difficult to square the ALJ's comment that "[t]he main thrust of the claim for disability in this case it [is] based upon the paid and limitation which the claimant alleges she has as a result of these various conditions," with the fact that Vega's principal medical complaint, according to her doctors, was one of chronic asthma, manifesting itself by wheezing, shortness of breath, and other symptoms that are not necessarily painful. Thus it would seem at first blush that the ALJ's findings on the complaints of pain do not go to "[t]he main thrust of the claim for disability," since Vega had proved that she had to cease work as a chamber-maid because of her asthma. On the other hand Vega herself in testimony related her asthma attacks principally to the winter and indicated that they "[d]on't last too much, too strong" and were rather readily remediable by use of a spray. Perhaps an explanation for the seeming inconsistency lies in a distinction between chronic asthma,

accompanied by shortness of breath, and acute asthma, consisting of a brief, remediable attack.

3. The Secretary notes that the Council's decision not to reopen the case is not subject to review and we do not disagree. The Secretary does not argue further and we do not believe that Vega's suit for review of the Secretary's ineligibility determination is untimely under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). That section provides that a party may obtain judicial review by filing suit within sixty days of a final decision made by the Secretary after a hearing. (Vega presented the psychiatrist's letter to the Council within sixty days of its initial determination. In the letter notifying her of its decision not to reopen the case, SSA indicated that her time to seek judicial review of the ineligibility determination had been extended to sixty days from the date of the letter. She filed this lawsuit within sixty days of the Council's decision not to reopen.)

determinations has been moving away from a case-by-case application of the broad statutory standard[4] toward a less discretionary approach in which an applicant's condition is compared with pre-determined criteria. In 1968, for example, SSA established the current system under which a claimant is deemed disabled if he suffers from a condition contained in a listing of impairments, or the medical equivalent. The regulations at issue here, which were promulgated in 1978 for both Social Security and SSI, apply to cases in which the claimant does not suffer from a listed impairment but has shown that he can no longer perform his prior work. In such cases, two questions must then be answered: whether in light of the claimant's vocational characteristics, his physical and mental impairments prevent him from performing other work in the economy and whether the claimant has the "vocational capabilities" necessary to adjust to different work. The new rules further limit the ALJ's discretion by requiring him first to make detailed findings of fact concerning a claimant's residual functional capacity, work experience, age, and education. 20 C.F.R. §§ 404.1503(f), 404.1505–.1511, 416.903(f), 416.905–.911 (1980). The ALJ must then consult the new medical-vocational guidelines, which are tables that indicate proper disability determinations for different combinations of facts, see 20 C.F.R. 404 Subpart P, App. 2; 416 Subpart I, App. 2 (1980).[5]

■ These new regulations for disability determinations in cases in which vocational as well as medical factors must be considered went into effect in February 1979. As of that date they became binding upon SSA's corps of ALJs. This court has indicated that the regulations apply to pending suits seeking judicial review of administrative determinations made prior to that effective date.

Although these regulations were not in effect at the time of [the claimant's] hearing, their express purpose was "to consolidate and elaborate upon long-standing medical-vocational evaluation policies for adjudicating disability claims," 43 Fed.Reg. 55,349 (1978), and they have been held to apply retroactively to appeals pending at the time of promulgation.

*Parker v. Harris*, 626 F.2d 225, 234 (2d Cir. 1980). *See Hicks v. Califano*, 600 F.2d 1048, 1050 (4th Cir. 1979). Explaining the need for these regulations, SSA stated at the time they were proposed that "[t]hese policies have in the past been reflected in fragmented guides and have not been readily available in the same format at all levels of adjudication," 43 Fed.Reg. 9285 (1978), and "statements of policy in administrative materials and internal guides and training sessions may not have been fully shared with the Bureau of Hearings and Appeals," *id.* at 9291.

■ Under the new regulations, the ALJ's findings of fact in this case are inadequate with respect to Vega's education. The ALJ did not determine, as required under the circumstances, whether Vega was

4. A disability under the statute is
   [the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months
   .    .    .    .    .
   42 U.S.C. § 423(d)(1)(A). *See id.* § 1382c(a)(3)(A).
   The statute further provides that a person is disabled if
   his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .
   *Id.* § 423(d)(2)(A). *See id.* § 1382c(a)(3)(B).

5. If a claimant suffers from physical impairments that cause exertional limitations and, on the basis of facts found by the ALJ, the guidelines dictate a finding of disability, the ALJ must find in the claimant's favor. If exertional limitations and vocational factors do not alone qualify a claimant for disability, and if the claimant also suffers from nonexertional limitations, the ALJ must still consult the tables for guidance. 20 C.F.R. 404 Subpart P, App. 2 § 200; 416 Subpart J, App. 2 § 200 (1980).

literate and whether she was able to communicate in English. *See* 20 C.F.R. §§ 404.-1507(f), 416.907(f) (1980). The circumstances are that appellant's less than four years of formal education took place in Puerto Rico and that, although she has lived in this country some thirty years, the hearing had to be conducted with a Spanish-English interpreter.

The only portion of the hearing that the transcript suggests may have taken place completely in English was the following:

> ALJ: Miss Vega, do you understand any English at all?
>
> MRS. VEGA: I understand something, yes. Not too much.
>
> ALJ: Like when you worked in the hotel, if somebody spoke to you in English, you could understand?
>
> MRS. VEGA: They asked (UNINTELLIGIBLE) hotel, wash the towels, watch the clothes, soap.
>
> ALJ: (UNINTELLIGIBLE) towels, yes. Okay. Fine.

This brief exchange, of course, is not a substitute for a determination on the question of ability to communicate in English. And the fact that Vega apparently was able to communicate sufficiently to perform her hotel job does not necessarily mean that she can communicate well enough to suit the standard in the new rules. *See* 20 C.F.R. § 404.1507(f), 416.907(f) (1980). The absence of findings by the ALJ on the questions of literacy and ability to communicate in English is crucial in light of the findings the ALJ did make that she was capable only of sedentary work, that her work experience was apparently in unskilled jobs, as a factory worker and hotel maid, and that she was forty-five years old at the time of the hearing. If Vega is also illiterate or "unable to communicate in English," then the new medical-vocational guidelines mandate a determination of disability, 20 C.F.R. 404 Subpart P, App. 2, Table 1 (Rule 201.17); 416 Subpart I, App. 2, Table 1 (Rule 201.17) (1980).

The Secretary, agreeing that the new regulations may be applicable to this case, argues unpersuasively that the ALJ's decision comports with them. The Secretary points to the testimony of the vocational expert that "neither education nor language would bar plaintiff from performing the types of sedentary work she opined were readily available in the metropolitan area and within plaintiff's capabilities," Brief for Defendant-Appellee at 15. In emphasizing this testimony, the Secretary is really suggesting that particularized proof in this case of ability to perform other work can supplant and override the contrary dictates of the new regulations. But the Secretary cannot have it both ways. She cannot escape what may be the conclusive effect of the rules in this case while depending upon them to guide and control the discretion of the ALJs in other cases. Because we find that the disability determination is inadequate under the new rules, Vega's claim must be remanded to the Department of Health and Human Services.

We reject Vega's other contentions, including her arguments that the ALJ failed to consider properly the subjective evidence of pain[6] and to elicit psychiatric evidence, and that the Appeals Council should have reopened her case when it received the letter about her emotional condition. From the opinion issued after the hearing, it is apparent that the ALJ did consider her claims of disabling pain and weighed their credibility, as required by *McLaughlin v. Secretary of Health, Education and Welfare*, 612 F.2d 701, 704–05 (2d Cir. 1980), and *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). In assessing the credibility of her testimony as to pain, the ALJ, by observing her ability to move her joints, did not interject a lay medical opinion. We also believe that, because questions as to Vega's mental capacity had not been raised at the time of the hearing, the ALJ did not err by failing to inquire into her psychiatric condition.[7] As for Vega's contention that

---

**6.** See, however, note 2 *supra*.

**7.** The fact that Vega had once complained of nervousness on an SSA form and that an SSA official had observed her acting nervously dur-

the Appeals Council erred in failing to re-open her claim, it has been clear at least since the Supreme Court's decision in *Califano v. Sanders*, 430 U.S. 99, 107–09, 97 S.Ct. 980, 985–86, 51 L.Ed.2d 192 (1977), that the federal courts do not have jurisdiction to review such decisions unless a constitutional issue is involved. At the same time, the Secretary on remand is not fore-closed from taking Vega's psychiatric problems into account in making a final assessment of her eligibility for benefits.

The judgment is reversed with directions to remand to the Secretary of Health and Human Services.

ing an interview was not sufficient to put in doubt her psychiatric condition and thus require the ALJ to assess her mental capacity, *see* 20 C.F.R. §§ 404.1505(e), 416.905(e) (1980). Although the letter Vega subsequently submitted to the Appeals Council shows that psychiatric evidence may very well have strengthened her claim, *see* 20 C.F.R. 404 Subpart P, App. 2, § 200(e)(2); 416 Subpart I, App. 2, § 200(e)(2) (1980), the ALJ did not under the circumstances fail to "inquire fully into the matters *at issue* and . . . receive in evidence the testimony of witnesses and any documents which are relevant and material to such matters," 20 C.F.R. § 404.927 (1980) (emphasis added).