**Luis CHICO, Plaintiff-Appellant,**

v.

**Richard SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 1220, Docket 83–6020.**

United States Court of Appeals, Second Circuit.

Argued April 28, 1983.

Decided June 27, 1983.

Ruben Nazario, Brooklyn, N.Y. (John C. Gray, Jr., Jane Greengold Stevens, Brooklyn Legal Services Corp. B, Brooklyn, N.Y.), for plaintiff-appellant.

Charles S. Kleinberg, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., Eastern District of New York, Miles M. Tepper, Asst. U.S. Atty.), Brooklyn, N.Y., for defendant-appellee.

Before FRIENDLY, KEARSE and WINTER, Circuit Judges.

FRIENDLY, Circuit Judge:

Luis Chico appeals from an order of Judge Bramwell in the District Court for the Eastern District of New York, which granted a motion by the Secretary of Health and Human Services (the Secretary) under F.R.Civ.P. 12(c) to dismiss his action to set aside the Secretary's denial of his claims for the establishment of a period of disability, 42 U.S.C. § 416(i), disability insurance benefits, 42 U.S.C. § 423(a), and supplemental security income, 42 U.S.C. § 1381a. Since the legal issue is the same with respect to all three claims and the supplemental security income regulations at 20 C.F.R. 416.920 *et seq.* mirror those at 20 C.F.R. 404.1520 *et seq.* for disability benefits, we shall generally refer to Chico's application as one for disability insurance benefits and will cite only the statutes and regulations pertaining to such benefits.

Chico, now 57 years old, was born in Puerto Rico and obtained a third grade education there. He does not understand enough English to carry on a conversation and cannot read or write it.[1] He worked for 20 years as a welding machine operator. His application for disability benefits was predicated on bronchial asthma, angina pectoris, and another undescribed heart ailment. A final decision of the Secretary denied Chico's application on the ground that his medical impairments were not "severe" in that they did not significantly limit his physical or mental ability to do basic work activities. In order to evaluate Chico's challenges to this determination it is necessary to set out the statutory and regulatory context in some detail.

For many years after the creation of the "disability freeze" by the Social Security Amendments of 1954, P.L. 83–761, and of the full-fledged disability insurance program by the Social Security Amendments of 1956, P.L. 84–880, the definition of disability was substantially what is now provided in 42 U.S.C. § 423(d)(1)(A):

(d)(1) The term "disability" means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

The judicial gloss on the statute imposed burdens on the Secretary, once a claimant had established an inability to return to prior work due to a medically determinable impairment, to show that work suitable for him existed in the geographical area where the claimant lived, see, e.g., *Hodgson v. Celebrezze*, 357 F.2d 750, 755 (3 Cir.1966), and that the claimant would stand a reasonable chance of getting hired for such work,

1. The administrative record indicates that Chico has "very limited literacy" in Spanish.

see, e.g., *Gardner v. Smith*, 368 F.2d 77, 85 (5 Cir.1966). The courts required disability benefits to be granted even to some claimants who had been able to find work of sorts. Thus, *Leftwich v. Gardner*, 377 F.2d 287, 291 (4 Cir.1967), held that a claimant who, despite a medically "disabling" affliction that prevented his continuing as a coal miner, continued to work four or five hours a day at a dishwashing job to support his family was entitled to benefits. See also, to much the same effect, *Flemming v. Booker*, 283 F.2d 321 (5 Cir.1960); *Hanes v. Celebrezze*, 337 F.2d 209 (4 Cir.1964). In 1967, after much debate, Congress disapproved the most extreme of what it regarded as judicial expansions of eligibility by adding what is now 42 U.S.C. § 423(d)(2)(A), P.L. 90–248.[2] This provided, in relevant part:

> (2) For purposes of paragraph (1)(A)— (A) an individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

The Secretary issued amended regulations to implement the new definition in 1968, 33 F.R. 11749, the most pertinent section of which provided:

> Whether or not an impairment in a particular case ... constitutes a disability ... is determined from all the facts of that case. Primary consideration is given to the severity of the individual's impairment. Consideration is also given to such other factors as the individual's age, edu-

cation, and work experience. Medical considerations alone can justify a finding that the individual is not under a disability where the only impairment is a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or a combination of slight abnormalities. On the other hand, medical considerations alone (including the physiological and psychological manifestations of aging) can, except where other evidence rebuts a finding of "disability," e.g. the individual is actually engaging in substantial gainful activity, justify a finding that the individual is under a disability where his impairment ... is listed in the appendix to this subpart or the Secretary determines his impairment (or combined impairments) to be medically the equivalent of a listed impairment.

20 C.F.R. § 404.1502(a) (1968). Appendix 1 of the regulations, the "Listing of Impairments", was introduced in 1968 to describe in detailed diagnostic terms, quantified where possible, those impairments "which are of a level of severity deemed sufficient to preclude an individual from engaging in any gainful activity". § 404.1506 (1968). A claimant suffering from a "listed impairment", if actually unemployed, was entitled to disability benefits without any need to consider the effect of his age, education, or work experience on his ability to do other work. Under the 1968 regulations, a claimant whose medical condition was neither so serious as the *per se* disabling "listed impairments" in Appendix 1 nor merely one of the "slight abnormalities" mentioned in § 404.1520(a) (1968) would have his application considered on all the facts, including the degree to which his age, education, and work experience combined with his impairment to affect his ability to engage in substantial gainful activity.

---

**2.** The provision was added in the House, deleted in the Senate, restored by the Conference Committee, and accepted by the Senate. See House Report No. 544, 90th Cong., 1st Sess. 28–31 (1967) (proposed amendment to disability definition); Senate Report No. 744, 90th Cong., 1st Sess. 46–50 (1967) (nearly identical proposal), *reprinted in* 1967 U.S.Code Cong. & Ad.News 2834, 2880–83; 113 Cong.Rec. 33,119 (1967) (defeated in Senate); Conference Report No. 1030, 90th Cong., 1st Sess.Amend. No. 109 (1967) (proposal restored), *reprinted in* 1967 U.S.Code Cong. & Ad.News 3179, 3197–98; 113

In 1978, the Secretary issued new regulations, 43 F.R. 55349,[3] which were modified in 1980, 45 F.R. 55566. Promulgated to achieve "greater program efficiency" by "limiting the number of cases in which it would be necessary to follow the vocational evaluation sequence" in full, these regulations effected a streamlining of the decisional process. The sequence now followed in evaluating claims of disability is set forth in 20 C.F.R. § 404.1520, which provides:

§ 404.1520. *Evaluation of disability in general*

(a) *Steps in evaluating disability.* We consider all material facts to determine whether you are disabled. If you are not doing substantial gainful activity, we will first consider your physical or mental impairment(s). Your impairment must be severe and meet the duration requirement before we can find you to be disabled. We follow a set order to determine whether you are disabled. We review any current work activity, the severity of your impairment(s), your residual functional capacity and your age, education, and work experience. If we can find that you are disabled or not disabled at any point in the review, we do not review further.

(b) *If you are working.* If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.

(c) *You must have a severe impairment.* If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are therefore, not disabled. We will not consider your age, education, and work experience. However, it is possible for you to have a period of disability for a time in the past even though you do not now have a severe impairment.

(d) *When your impairment meets or equals a listed impairment in Appendix 1.*

If you have an impairment which meets the duration requirement and is listed in Appendix 1, or we determine that the impairment is equal to one of the listed impairments, we will find you disabled without considering your age, education, and work experience.

(e) *Your impairment must prevent you from doing past relevant work.* If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment, we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.

(f) *Your impairment must prevent you from doing any other work.* (1) If you cannot do any work you have done in the past because you have a severe impairment, we will consider your residual functional capacity and your age, education, and past work experience to see if you can do other work. If you cannot, we will find you disabled.

(2) If you have only a marginal education, and long work experience (i.e. 35 years or more) where you did only arduous unskilled physical labor, and you can no longer do this kind of work, we use a different rule (see § 404.1562).

A claimant entering the sequence prescribed in § 404.1520 must already have met the statutory prerequisite, 42 U.S.C. § 423(d)(1)(A), of showing a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuing period of not less than 12 months". The next hurdle is § 404.1520(b). A claimant who is engaged in what the Secretary determines to be "substantial gainful activity" is denied benefits at this preliminary stage.

A claimant who satisfies the Secretary that he is unemployed proceeds then to a threshold "severity" test embodied in

Cong.Rec. 36,924 (1967) (restoration accepted by Senate).

3. The preamble to these regulations, 43 F.R. 55349–51, contains a valuable discussion of the history.

§ 404.1520(c). If the Secretary finds that the claimant lacks a "severe" impairment, to wit, one that "significantly limits [his] physical or mental ability to do basic work activities", the Secretary will deny benefits without considering the claimant's age, education, and work experience. Whether an impairment is or is not severe is determined in accordance with § 404.1521, which provides:

§ 404.1521. *What we mean by an impairment that is not severe*

(a) *Non-severe impairment.* An impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities.

(b) *Basic Work Activities.* When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations;

(6) Dealing with changes in a routine work setting.

A claimant who satisfies the Secretary that his impairment is "severe" within the meaning of § 404.1520(c) proceeds next to the determination, retained from the 1968 regulations, whether his impairment meets or equals any of the diagnostic standards in the Listing of Impairments in Appendix 1. If it does, the Secretary is required by § 404.1520(d) to award disability benefits to the claimant regardless of his age, education, or work experience. The "*per se disabilities*" in the Listing of Impairments are described in § 404.1525 as "impairments which are considered severe enough to prevent a person from doing any gainful activity". Section 404.1520(d) thus embodies a second and more rigorous "severity" test under which claimants whose medical conditions are so serious that they are obviously incapable of earning a living are awarded benefits without further inquiry into their vocational background.

A claimant whose impairment was "severe" enough to "limit [his] physical or mental ability to do basic work activities" for purposes of § 404.1520(c), but not "severe enough" under § 404.1520(d) "to prevent [him] from doing any gainful activity", reaches the next stage in the decisional process. At this point the Secretary evaluates his "residual functional capacity" to perform one or more categories of work ranging from sedentary through light and medium to heavy (or very heavy) work. Section 404.1545 provides that this "residual functional capacity for work activity on a regular and continuing basis" be determined by measuring physical abilities ("walking, standing, lifting, carrying, pushing, pulling, reaching, [and] handling"), mental abilities ("to understand, to carry out and remember instructions, and to respond appropriately to supervision, co-workers and work pressures"), and medical difficulties, such as "impairments of vision, hearing, and other senses". A claimant who has the residual functional capacity to return to his previous type of work, for example a claimant who left his sedentary employment because of an impairment but retains the capacity to perform most sedentary jobs, will be denied benefits under § 404.1520(e).

To reach the last stage of the evaluation sequence, a claimant must be found to have a "severe" (in the first sense) but not a "listed" impairment, and must also lack the residual functional capacity to return to his past work. One who left, let us say, some type of heavy work and now, due to his impairment, has only the residual functional capacity to perform sedentary work, will have this factor considered, pursuant to § 404.1520(f), along with his age, education, and the extent to which he possesses transferable skills. For use in this final stage, the Secretary has provided in Appendix 2 an elaborate set of Medical-Vocational Guidelines which sort out all the above variables and determine whether or not there are positions available in the national economy for the claimant and thus whether or

not the claimant will receive disability benefits.

We have had occasion to consider various aspects of these regulations in numerous cases, including *Parker v. Harris*, 626 F.2d 225 (2 Cir.1980); *Vega v. Harris*, 636 F.2d 900 (2 Cir.1981); *Decker v. Harris*, 647 F.2d 291 (2 Cir.1981); *Berry v. Schweiker*, 675 F.2d 464 (2 Cir.1982); *Kolodnay v. Schweiker*, 680 F.2d 878 (2 Cir.1982); *Echevarria v. Secretary of Health & Human Services*, 685 F.2d 751 (2 Cir.1982); and *Carroll v. Secretary of Health & Human Services*, 705 F.2d 638 (2 Cir.1983).

On this appeal Chico asks us to decide that § 404.1520(c) of the Regulations is invalid as it was applied to him. He argues that the provision in that subsection whereby, in determining whether a claimant does not have an impairment which "significantly limits" his ability "to do basic work activities" the Secretary "will not consider your age, education, and work experience" flatly contradicts the provision in § 423(d)(2)(A) which states that a person shall be considered "to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, *considering his age, education and work experience,* engage in any kind of substantial gainful work which exists in the national economy." [4] The Secretary makes various responses—particularly that the challenged regulation is within the broad rulemaking power conferred by 42 U.S.C. § 405(a), under the test stated in *Mourning*

*v. Family Publications Service,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973), to wit, that, as said in *Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268, 280–81, 89 S.Ct. 518, 525–26, 21 L.Ed.2d 474 (1969), it is "reasonably related to the purposes of the enabling legislation". He argues also that the challenged regulation has been upheld by several other courts of appeals and that Chico should not be allowed to make the challenge here since he did not do so in the district court.[5]

Although Chico did not attack the validity of the regulation in the district court with the clarity that he has done here, the brief filed on his behalf said enough to apprise the Secretary of Chico's position. Moreover, since the issue is essentially one of law, and the district court was not authorized to take any new evidence under 42 U.S.C. § 405(g), our consideration of it would come within the discretion accorded by *Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941), as later elaborated in *Singleton v. Wulff,* 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). We also do not agree that there is a consensus among the courts of appeals with respect to the validity of the "severity" regulation. In *Lofton v. Schweiker,* 653 F.2d 215 (5 Cir.1981), *cert. denied,* 454 U.S. 1089, 102 S.Ct. 651, 70 L.Ed.2d 626 (1981), the court simply assumed the validity of the regulation, adding an interesting footnote with respect to the question raised by Chico, 653 F.2d at 217 n. 1, which we reproduce in the margin.[6] In

---

**4.** The crux of Chico's argument against the validity of the regulation as applied to him is its use of the term "severe". Chico concedes that "[t]here may be claims based on minor physical complaints, in which it is patently clear that the claimant's abilities to function are hardly impaired, in which it would be a pointless exercise for the Secretary to have to thoroughly consider the claimant's vocational characteristics" and that a regulation winnowing out such claims "may be consistent with the Act". Brief at ·18.

**5.** The Secretary does not contend that we must dismiss Chico's challenge to the validity of the regulation because this was not made before the agency. In light of *Mathews v. Eldridge,* 424 U.S. 319, 330, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976), the Secretary was well advised not

to take this position on the facts here. See also 4 Davis, Administrative Law Treatise § 26.7 (2d ed. 1983).

**6.** During recent revisions and restatement of these regulations in simpler language the Secretary received a comment suggesting that this section of the regulations which authorizes denial of claims on the basis of a determination that an individual's impairment is not severe may conflict with judicial approaches to the problem of defining disability which have customarily focused on the individual's residual functional capacity to do his or her previous work or some other work present in the national economy. The Secretary replied that the sequential evaluation process, which required an assessment of the severity of an individual's

*McCoy v. Schweiker,* 683 F.2d 1138 (8 Cir. 1982) (en banc), the claimants had passed the initial severity test and the question related to the validity of the Appendix 2 "guidelines", an issue settled in favor of the Secretary by the Supreme Court in *Heckler v. Campbell,* —— U.S. ——, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). *Goodermote v. Secretary of Health & Human Services,* 690 F.2d 5, 7 (1 Cir.1982), expressly noted that the appellant did not challenge the validity of the regulations. *Chapman v. Schweiker,* No. 81–1025 (10 Cir., Feb. 26, 1982), and *Hilton v. Schweiker,* No. 81–1139 (10 Cir., Feb. 26, 1982), did sustain the validity of the "severity" regulation, but the decisions were by a divided panel and the full court, after rehearing en banc, ordered the opinions withdrawn and the cases remanded to the district court for further development on the question of validity.

However, we believe it is not necessary for us in this case to resolve what we consider to be a close question of the validity of the "severity" regulation, involving as it does a seeming conflict between the letter of § 423(d)(2)(A), on the one hand, and, on the other, the Secretary's understandable desire to supply, in what has been called "probably the largest adjudicative agency in the western world", J. Mashaw, Social Security Hearings and Appeals, p. xi (1978),[7] some threshold that a claimant must pass before the Social Security Administration is required either to apply the Appendix 2 guidelines or to call vocational experts, and the Supreme Court's recognition, reaffirmed in its recent decision in *Campbell,* that Congress has "conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the [Social Security] Act," *Schweiker v. Gray Panthers,* 453 U.S. 34, 43, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981). This is because, assuming the "severity" regulation to be valid, it may not have been properly applied in this case, as a detailed review of the administrative record will show.

Chico's initial applications for disability insurance benefits dated October 2, 1980, and for supplemental security income benefits dated November 18, 1980, were denied on December 5, 1980, on the basis of findings by the disability examiner that his pulmonary condition "did not meet or equal [the] level of severity of tables of medical listings" in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that although he did not have the residual functional capacity to return to his past work, he did retain the residual functional capacity to perform "sedentary work" such as that of a cashier (clerical), ticket seller (clerical), or clerk-draftsman (clerical), positions then available in sufficient numbers in New York State.[8]

7. As noted by the Supreme Court in *Heckler v. Campbell, supra,* —— U.S. at —— n. 2, 103 S.Ct. at 1954 n. 2, approximately 2.3 million claims for disability benefits were filed in fiscal year 1981, more than a quarter of a million of which required a hearing before an ALJ. The Court added: "The need for efficiency is self-evident."

8. It is not clear whether the disability examiner gave appropriate weight to § 404.1564(b)(5) which reads:

*Inability to communicate in English.* Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do.

impairment prior to and apart from a specific inquiry into that person's ability to perform his or her past work or other specific types of jobs, was designed to improve "program efficiency ... by limiting the number of cases in which it would be necessary to follow the vocational evaluation sequence ...." 45 Fed.Reg. 55574 (1980). The Secretary indicated that the degree to which this practice had in fact achieved this goal was under scrutiny and that there was some question whether in fact the practice had not effected a substantial improvement in efficiency. The Secretary observed that:

"In most cases that involve an impairment that is not severe, the vocational evaluation guides can be applied as efficiently as can the nonsevere impairment principle. Most cases of this kind do not require extensive investigation of a person's vocational background in order to evaluate them under the vocational guidelines. We can decide many cases of this type on the basis that a person can return to his or her most recent occupation." The Secretary is currently studying the feasibility of revising this regulation.

The disability examiner further indicated that the rationale for denial of benefits was Rule 201.11 of the Medical-Vocational Guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2, providing that a claimant with residual functional capacity limited to sedentary work as a result of severe medically determinable impairment(s), although closely approaching advanced age, of limited education, and possessed of transferable skills, will not be found disabled.

Chico requested reconsideration on the basis of additional medical evidence. This was denied on April 22, 1981, on a finding by another disability examiner that Chico's impairments "are not of sufficient severity to meet or equal [the] Listing of Impairments." At that time the second disability examiner and a review physician had before them hospital records showing pulmonary function tests on September 27, 1979, and July 20, 1980, indicating "moderate severe mixed obstructive-restrictive ventilatory pattern" and "moderate obstructive ventilatory pattern with more severe small airway disease and restrictive components", as well as two consultative examinations arranged by the Social Security Administration evaluating Chico's residual functional capacity to sit, stand, walk, lift, carry, and so forth.

Chico requested a hearing before an ALJ, which was held on August 4, 1981. At the hearing, following Chico's testimony, Dr. Edward Sang testified as an SSA-authorized Medical Advisor that Chico has "chronic obstructive pulmonary disease" [9] which "affected his pulmonary function to a moderate extent." When questioned by Chico's representative, a paralegal, Dr. Sang explained that by "moderate" he meant that Chico's condition "does not fall into the category of severe, according to the . . . listings" in Subpart P. On re-examination by the ALJ, Dr. Sang further clarified his testimony by pointing to hospital pulmo-

nary function tests that showed Chico's breathing problems did not meet the numerical levels of "forced expired carried volume" and "maximum voluntary ventilation" set forth in § 3.02 of Appendix 1, the "listing" for chronic obstructive airway diseases.

In his decision of August 25, 1981, the ALJ determined that "the claimant suffers from no impairment or combination of impairments taken either singly or in combination which would be considered 'severe' under Title II [disability insurance benefits] or Title XVI [supplemental security income benefits] of the Act". He based his opinion on findings that, although Chico had "chronic pulmonary disease of moderate severity", it did not amount to an impairment that would "significantly limit the ability to perform basic work-related functions". Applying 20 C.F.R. §§ 404.1520(c) and 416.920(c), the ALJ concluded that Chico therefore did not have a severe impairment and was not under a disability. When the Appeals Council denied Chico's request for review, the ALJ's determination became the final decision of the Secretary.

Although the ALJ's decision conforms to the language of §§ 404.1520(c) and 416.920(c), there is reason to fear that he may well have misapplied them by adopting Dr. Sang's definition of "severe" as including only cases falling within the Listing of Impairments, which, according to § 404.1525(a), describes "impairments which are considered severe enough to prevent a person from doing any gainful activity." According to § 404.1520(d), a claimant with a listed impairment is found disabled without any consideration of his age, education, work experience, residual functional capacity, or place in the medical-vocational "grids" in Appendix 2. A claimant clearly does not have to meet this level of severity to overcome the severity requirement of § 404.1520(c).[10] Such an interpretation

---

It generally doesn't matter what other language a person may be fluent in.
Under the ALJ's application of the severity regulation, this became immaterial.

**9.** Sang testified that a chronic obstructive pulmonary disease was a condition that had advanced beyond the stage of asthma and that would cause a patient to be short of breath on exertion, to cough chronically, to be more sub-

ject to respiratory infections than the normal individual and to be more sensitive to extremes in temperature, air pollutants, and smoke.

**10.** The Secretary's preamble in the Federal Register reveals that the "severity" regulation, as originally promulgated in 1978, was meant to clarify the 1968 regulation's terms "a slight neurosis, slight impairment of sight or hearing,

would require denial of benefits to every claimant without a listed impairment, thus rendering otiose § 404.1520(e) and (f), which require further consideration to be given to claims of those whose impairments do not meet or equal the Listing in Appendix 1. A person may have a "severe" impairment under the regulations if, although not a listed impairment, it "significantly" limits his "basic work activities" under § 404.1521.

It is also apparent from this procedural history that on Chico's initial application the SSA determined that his claim for benefits survived the winnowing effect of § 404.1520(c). The disability examiner who denied the initial claim for benefits, after finding that Chico's impairment did not meet or equal the standards for *per se* disability in the Listing of Impairments then went to the next stage of the decision-making process, § 404.1520(e), and assessed Chico's "residual functional capacity". He found that Chico lacked the capacity to return to his past work and could only perform sedentary work. The disability examiner then proceeded to § 404.1520(f), in which factors of residual functional capacity, age, education, and past work experience are sorted out with the aid of the medical-vocational guidelines in Appendix 2. Thus the first disability examiner to consider Chico's claim reached the very last stage of § 404.1520's sequential determinations before denying it. Chico's initial success at the § 404.1520(c) stage did not preclude the ALJ from returning to that stage and finding against Chico on the issue of severity.[11] However, we are troubled by the lack of explanation for the differing view taken by the ALJ in his rather cursory decision in the absence of further evidence showing that the first disability examiner had been too favorable to Chico and our fear that the ALJ may have mistakenly thought, on the basis of Dr. Sang's testimo-

ny, that Chico must pass the tests set forth in Appendix 1 in order to establish "severity" under § 404.1520(c).

In his brief in the district court, Chico raised the point that the ALJ, by basing his determination largely on Dr. Sang's testimony, "confused the issue of impairment severity with the issue of whether the impairment met the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." The brief on behalf of the Secretary afforded some confirmation of this; it stated that "the Secretary correctly found that plaintiff was not disabled under the requirements of the Act" in part because "plaintiff has failed to prove that his impairment is among those listed" in Appendix 1 "or that it is the medical equivalent of a listed impairment", and by citing regulation 20 C.F.R. § 404.1525 on the Listing of Impairments as well as § 404.1520(c). The district court's oral opinion concluded only that the Secretary's determination that Chico was not disabled was within the meaning of disability in the Social Security Act and that substantial evidence supported this; it did not deal with Chico's contention that the ALJ had erroneously incorporated the requirements of § 404.1525 and the Listing of Impairments into the threshold severity determination of § 404.1520(c).

We therefore reverse the order dismissing Chico's action and remand to the district court with directions to remand to the Secretary in order that all this may be clarified. No costs.

---

or other slight abnormality or combination of slight abnormalities" but was not intended "to alter the levels of severity for a finding of ... [']not disabled['] on the basis of medical considerations alone," 43 F.R. 55358. The recodification in 1980 evinced no change in this expression of the Secretary's intent, 45 F.R. 55574.

11. Intermediate determinations of the disability examiner favorable to Chico were put in issue by the ALJ, by means of the notice of hearing, pursuant to 20 C.F.R. § 404.946.