Domingo LUGO, Plaintiff,

v.

Shirley S. CHATER, Commissioner of the Social Security Administration, Defendant.

No. 94 Civ. 4633 (SS).

United States District Court, S.D. New York.

March 13, 1996.

Opinion Reaffirming Decision on Reconsideration April 19, 1996.

Binder & Binder, Hauppauge, N.Y. (Robert M. Brigantic, of counsel), for plaintiff.

United States Attorney, S.D.N.Y., New York City (Linda A. Riffkin, of counsel), for Defendant.

## *OPINION AND ORDER*

SOTOMAYOR, District Judge.

Domingo Lugo brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying Lugo's application for disability insurance benefits. Both parties have moved for judgment on the pleadings pursuant to Fed.

R.Civ.P. 12(c). For the reasons set forth below, both motions for judgment on the pleadings are **DENIED**. The Secretary's decision is **REVERSED** and **REMANDED** for a rehearing in accordance with the following discussion.

### BACKGROUND

Plaintiff Domingo Lugo is a 49–year–old man who was born in Puerto Rico and emigrated to the United States in 1962. Although he completed ten or eleven years of schooling in Puerto Rico, his ability to communicate in English is limited. (Tr. at 30, 189, 203.) Lugo worked for about nine years as a casket polisher, eleven years as a stock clerk in a warehouse, and about one year as a sales clerk at a produce warehouse. (Tr. at 143.) In 1989, he was diagnosed with a central retinal vein occlusion in his right eye, (Tr. at 156), which progressed to secondary glaucoma and ultimately to blindness in that eye. (Tr. at 264.) Lugo also has a long history of hypertension (elevated blood pressure), suffers from asthma and osteoarthritis of the knees, and claims that he experiences headaches, dizziness, and frequent, intense pain in both eyes.

Lugo stopped working in January of 1990 and filed for Disability Insurance Benefits and Supplemental Security Income on January 25, 1990. His applications were denied both initially and upon reconsideration. (Tr. at 51–53, 59–64, 63–71, 73–76). Lugo requested a hearing before an Administrative Law Judge on both applications and appeared before ALJ Peter F. Crispino on January 2, 1991. At the hearing, Lugo testified about his education, his ability to communicate in English, his past work experience, and the nature and extent of his medical problems. (Tr. at 28–45.) The ALJ found that Lugo was not disabled and denied benefits, (Tr. at 15–20), and this finding was adopted by the Commissioner. Lugo then sought review by the Appeals Council, which in 1992 remanded the case for further consideration.

A second hearing was held before ALJ Louis V. Zamora on April 12, 1993. Lugo again testified about his work experience, education, and physical impairments. (Tr. at 182–238.) Lugo stated that on a typical day, his sole activities consist of listening to the radio, talking with his wife and son, and napping. (Tr. at 198–200.) He said that all of his meals are prepared by his wife. Although he is able to feed and dress himself, (Tr. at 197–198), he asserted that he cannot do housework and cannot take public transportation by himself because of his limited eyesight. (Tr. at 189, 203.) He further testified that his other symptoms—chiefly dizziness, headaches, and pain in his eyes and legs—render him incapable even of reading or watching television.

A vocational expert, Bala Carr, also testified at the hearing. Carr stated that Lugo could not be expected to return to his past work, but that he could perform certain types of sedentary work that did not require fine visual acuity or exposure to dangerous or moving vehicles or machinery. (Tr. at 177.) As examples of the type of work that Lugo could perform, Carr cited "inside parking lot cashier," "inside newsstand salesperson," and "order caller" in a warehouse, large repair site or retail location. (Tr. at 210–24.)

The ALJ found that Lugo was not disabled and denied benefits. (Tr. at 173–179.) The ALJ concurred with the vocational expert that Lugo could perform limited types of sedentary work, and concluded that a substantial number of jobs existed in the national economy which Lugo could still perform. The ALJ further determined that Lugo's reports of pain and dizziness were "not credible with respect to severity." The ALJ's decision became the final decision of the Commissioner, and Lugo now seeks judicial review of that determination.

### SCOPE OF JUDICIAL REVIEW

Judicial review of the Commissioner's decision is strictly limited; the reviewing court may not decide *de novo* whether the claimant is disabled, but rather must determine whether the Commissioner applied the appropriate legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987). "The findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C.

§ 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)).

■ A finding of legal error is cause for remand, even if substantial evidence exists to support the Commissioner's factual findings. *Johnson,* 817 F.2d at 986; *see also Northcutt v. Califano,* 581 F.2d 164, 167 (8th Cir.1978). Moreover, a finding that the Commissioner has failed to specify the basis for her conclusions is an equally compelling cause for remand. "It is self-evident that a determination by the [Commissioner] must contain a sufficient explanation of [her] reasoning to permit the reviewing court to judge the adequacy of [her] conclusions." *Rivera v. Sullivan,* 771 F.Supp. 1339, 1354 (S.D.N.Y.1991); *see also White v. Secretary of Health & Human Servs.,* 910 F.2d 64, 65 (2d Cir.1990); *Thorne v. Weinberger,* 530 F.2d 580, 582 (4th Cir.1976); *Baerga v. Richardson,* 500 F.2d 309, 312–13 (3d Cir.1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975).

Based on the record before me, I find that the Commissioner committed both types of error and conclude that remand is appropriate.

### DISCUSSION

*A. Determination of plaintiff's English-speaking ability*

■ In determining whether a claimant is disabled under the Social Security Act, an ALJ must begin with the Medical–Vocational Guidelines found in Appendix 2 of 20 C.F.R. Subpart P. These guidelines, also known as "grid rules," are a set of formulae used to determine whether a given claimant is disabled or healthy enough to perform work. The rules take into account such factors as age, education level, previous work experience, and physical limitations. *Decker v. Roberts,* 647 F.2d 291, 296 (2d Cir.1981).

■ Before slotting a claimant into a particular grid rule, however, the ALJ must first determine whether the claimant is conversant and literate in English. *Vega v. Harris,* 636 F.2d 900, 903–904 (2d Cir.1981); *see* 20 C.F.R. §§ 404.1564(b)(5), 416.964(b)(5). This finding is pivotal because it dictates which grid rule the ALJ will use as a framework for decisionmaking, and which type of testimony he will solicit from a vocational expert, if one is required. The ALJ is authorized to rely on the relevant grid rule to guide his evaluation of whether the claimant is disabled.[1] In this case, the ALJ stated that he relied on the grid rules in evaluating Lugo. The record contains strong evidence, however, that the ALJ relied on the wrong rule.

In assessing Lugo's language abilities, the ALJ found that Lugo had a "limited ability to communicate in English and to read and write English." (Tr. at 178.) Hence, the ALJ relied on Rules 201.20 and 201.26 as a "framework" for his decision that Lugo was not disabled. (Tr. at 177.) Rules 201.20 and 201.26 apply to claimants who are "at least literate and able to communicate in English;"

---

1. Where a claimant's medical-vocational profile correlates perfectly with that of a particular grid rule, the rule will dictate whether the claimant can be considered disabled. *Decker,* 647 F.2d at 296. All grid rules, however, assume that the claimant is capable of performing a full range of sedentary work. In cases such as this one, where the claimant cannot perform a full range of sedentary work, he must be evaluated individually rather than by a mechanical application of the grid rules. *Nelson v. Bowen,* 882 F.2d 45, 46 (2d Cir.1989). When nonexertional impairments significantly diminish the claimant's ability to perform a full range of sedentary work, the testimony of a vocational expert is required. *Bapp v.*

*Bowen,* 802 F.2d 601, 605–06 (2d Cir.1986). In such cases, the ALJ is expressly authorized to rely on the grid rules both to structure his questioning of the vocational expert and to arrive at his ultimate conclusion. *See, Abbott v. Sullivan,* 905 F.2d 918, 926 (6th Cir.1990) (grid rules may provide guidance for decisionmaking).

In this case, it is undisputed that Lugo's right-eye blindness constitutes a nonexertional impairment and that Lugo can perform only a limited range of sedentary work. Although the grid rules are therefore not dispositive in this case, they are relevant to the extent that the ALJ relied on them.

such individuals necessarily have a wider range of employment opportunities than non-English-speakers. The record indicates, however, that Lugo is neither literate nor even minimally conversant in English.

At both hearings before the ALJ, Lugo testified exclusively in Spanish through the aid of an interpreter. As Lugo testified, his formal education was acquired entirely in Spanish in Puerto Rico. He is literate in Spanish, but his ability to communicate in English is severely limited. (Tr. at 192, 203–204.) In his past jobs, Lugo communicated almost exclusively in Spanish, and when he had to deal with English-speaking customers, he sought assistance from other Spanish-speaking employees. (*Id.*) Lugo testified that he can neither read nor write in English—a statement that is undisputed in the record. When he worked as a sales clerk at the produce warehouse, he could recognize and copy certain words from boxes of produce, but he could not understand them. (Tr. at 203–204.)

The ALJ did not specify the basis of his finding that Lugo could both speak and read some English. The ALJ did, however, conduct the following exchange with Lugo:

ALJ: Now, Mr. Lugo, dealing with all the customers, now, you speak some English, is that correct?

Lugo: A little.

ALJ: Now, in your work, did you speak mostly English or did you speak mostly Spanish?

Lugo: Spanish.

ALJ: And if you had an English speaking customer, could you still take care of him?

Lugo: Well, if somebody went in who spoke English, there were other Hispanics there and I would ask them what the person wanted.

This exchange took place entirely in Spanish with the aid of an interpreter, and constituted the extent of the ALJ's inquiry at the second hearing. (Tr. at 192.)

■ The Second Circuit has held that even a brief exchange *in English* between an ALJ and a claimant "is not a substitute for a determination on the question of ability to communicate in English." *Vega*, 636 F.2d at 904. In *Vega*, a Spanish-speaking claimant had been found to have some English-speaking ability because she had spoken a few sentences of English at her administrative hearing, while testifying primarily in Spanish through an interpreter. When asked by the ALJ if she understood any English, she responded in English, "I understand something, yes. Not too much." *Id.* The court in *Vega* found the ALJ's findings of fact to be inadequate with respect to Vega's understanding of the English language and reversed and remanded the case for reconsideration. In the case at bar, the ALJ's "brief exchange" with Lugo was even less probative of English-speaking ability. To the extent that the ALJ relied on the above conversation to support his finding, his reliance was in error.

■ The ALJ also erred by failing to create a clear record for review. An ALJ is required to make "detailed findings of fact" regarding a claimant's residual functional capacity, work experience, age, and education. *Vega*, 636 F.2d at 903. Here, the ALJ provided no explanation for his assessment of Lugo's ability to communicate in English and, as noted *supra*, the record contradicts his finding that Lugo was literate in English. "It is self-evident that a determination by the [Commissioner] must contain a sufficient explanation of [her] reasoning to permit the reviewing court to judge the adequacy of [her] conclusions." *Rivera v. Sullivan*, 771 F.Supp. at 1354. As noted above, failure by the Commissioner to specify the basis for her conclusion is cause for remand.

Reliance on the correct grid rule is essential if the ALJ—and the vocational expert—are to evaluate Lugo's application properly. In this case, the evidence strongly suggests that Rule 201.17, which applies to individuals who are "illiterate or unable to communicate in English," was the proper framework for decisionmaking. On remand, if the ALJ continues to believe that Lugo can communicate and/or read and write in English, he must explain how he arrives at this conclusion in light of the testimony in the record.

## B. Credibility of Lugo's subjective complaints of pain

Lugo testified that he experiences constant pain in both eyes and suffers from frequent dizziness and headaches. (Tr. at 35, 184.) The ALJ concluded, however, that Lugo's complaints of pain are not severe enough to keep Lugo from working. The ALJ based this finding on two fragments of testimony: (1) the statement of a medical expert, Dr. Haft, that "there is no basis for the pain in the claimant's left eye," (Tr. at 175), and (2) the fact that as of January of 1991, Lugo's elevated blood pressure level had improved, (Tr. at 175).

■■■ "It has been established, both in this Circuit and elsewhere, that subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979). The ALJ has the discretion to evaluate the credibility of a claimant's complaints of pain. *Id.* However, the ALJ is required to take objective medical reports into consideration when making such a judgment. *Id.* at 27–28. Furthermore, the ALJ may not discount subjective complaints of pain solely because physicians have been unable to diagnose the source of that pain. *Marcus*, 615 F.2d at 27; *see also Ber v. Celebrezze*, 332 F.2d 293, 299 (2d Cir.1964) ("Even pain unaccompanied by any objectively observable symptoms which is nevertheless real to the sufferer and so intense as to be disabling will support a claim for disability benefits.").

■■■ In this case, the ALJ improperly discounted Lugo's reports of pain on the ground that no physician had supplied a diagnosis for that pain. This is a direct violation of the *Marcus* rule.

The ALJ further erred by relying solely on those medical reports which emphasized Lugo's health, while ignoring equally relevant medical evidence that emphasized Lugo's frailty. The latter evidence included a treatment note from Haft that Lugo's blood pressure was not fully controlled, (Tr. at 145–146); a recent medical report, filed in April, 1993, confirming Lugo's "uncontrolled hyper-tension," (Tr. at 274); and statements by medical experts that uncontrolled hypertension can account for such symptoms as dizziness and headaches, (Tr. at 149, 268). Furthermore, the medical and vocational experts all testified that the presence of such symptoms would impair Lugo's ability to work. (Tr. at 43, 209.)

■■■ Where there is conflicting evidence, the ALJ must assess the credibility of the claimant's complaint of pain. *Donato v. Secretary of Dep't of Health & Human Servs.*, 721 F.2d 414 (2d Cir.1983). Here, the record is unclear as to whether the ALJ made an impartial assessment. The ALJ's failure to explain how he reached his conclusion, in light of the conflicting evidence, was an error of law and supports a remand. *Rivera v. Sullivan*, 771 F.Supp. at 1354.

■■■ The ALJ erred in a third way by mischaracterizing Lugo's own testimony. The ALJ bolstered his skepticism about Lugo's reports of pain by observing that Lugo had testified that he "does housework and uses public transportation." (Tr. at 176.) The ALJ's statement in this regard was simply wrong. Lugo had clearly testified that he did *not* do housework and was *unable* to take public transportation by himself because of his "vision." (Tr. at 203.) On remand, if the ALJ again finds that Lugo's complaints of pain are unfounded, his conclusion must be based on accurate references to the record.

## C. Adequacy of the vocational expert's testimony

■■■ The ALJ states that he placed "substantial weight" on the vocational expert's testimony because he believed he had given her an accurate picture of Lugo's educational-vocational profile. (Tr. at 177.) The vocational expert, as noted *supra*, concluded that Lugo was physically able to work as an "inside parking lot cashier," an "inside newsstand salesperson," or an "order caller" in a warehouse. (Tr. 210–24.) The record, however, indicates that the vocational expert's testimony is unreliable because the ALJ's questioning was based on hypothetical examples which did not accurately describe Lugo's

abilities. In addition, the ALJ's manner of questioning appears to have confused her.

All of the ALJ's hypothetical examples assumed that Lugo possessed a limited ability to communicate in English. For the reasons discussed *supra*, this assumption may be unduly optimistic. None of the hypotheticals included the left eye pain of which Lugo complains and which, combined with Lugo's other impairments, may make him unable to perform the jobs the vocational expert listed. (Tr. at 209.) Furthermore, the ALJ's questioning of Carr makes it difficult to ascertain which hypothetical the ALJ was referring to and which hypothetical the vocational expert was responding to. (Tr. at 207–210). In answering the ALJ's questions, Carr frequently referred to numbered hypotheticals (e.g., "in answer to your third hypothetical") which did not clearly correlate with the number of hypotheticals presented to her at that time. (Tr. at 210.) In addition, the ALJ's frequent shifting between a hypothetical claimant with impaired vision in the right eye, no vision in the right eye, pain in both eyes, and moderate pain in the right eye, combined with Ms. Carr's failure to confirm which hypothetical profile she was responding to, render the foundation of her subsequent testimony unclear and inconclusive.

 "A vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job." *Aubeuf v. Schweiker,* 649 F.2d 107, 114 (2d Cir.1984); *see also De Leon v. Secretary of Health and Human Servs.,* 734 F.2d 930, 936 (2d Cir.1984) (vocational expert's testimony is useful only insofar as ALJ presents full extent of claimant's physical disabilities). Proper use of vocational testimony presupposes both an accurate assessment of the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform. Neither occurred here. The exchange between the ALJ and the vocational expert was hopelessly muddled, forming an unacceptable basis for the ALJ's decision regarding Lugo's disabilities and capacity for substantial employment. On remand, the ALJ must pose accurate hypothetical examples to the vocational expert and make sure that he and the vocational expert are talking about the same hypothetical at the same time.

### CONCLUSION

The ALJ failed to determine the Plaintiff's ability to communicate in English, failed to account for his dismissal of Lugo's subjective complaints of pain, and failed to elicit reliable testimony from the vocational expert. For the foregoing reasons, the parties' motions for judgment on the pleadings are **DENIED**, and this case is **REVERSED** and **REMANDED** to the Commissioner for reconsideration in accordance with this Order and Opinion.

**SO ORDERED.**

### MEMORANDUM OPINION AND ORDER ON REHEARING

Domingo Lugo brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying Lugo's application for disability insurance benefits. By Opinion and Order dated March 13, 1996 (the "Order"), I remanded this action for further administrative proceedings. Defendant has timely moved for a rehearing and asks me to reconsider my finding that the Commissioner improperly evaluated plaintiff's complaints of pain. For the following reasons, I affirm my decision to remand this action for further consideration.

The Commissioner contends that I erroneously relied on the Second Circuit's holding in *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979), and that this case has been superseded by subsequent regulations. I agree with the Commissioner that 20 C.F.R. §§ 404.1529 and 416.929, enacted after *Marcus,* do provide that (1) pain alone cannot establish disability, as that term is defined in section 223(d)(1) of the Social Security Act, 42 U.S.C. § 423(d)(1), and (2) a petitioner must offer some medical evidence to support a claim of pain as a disabling condition.

Nevertheless, as Lugo's counsel correctly points out in his responsive letter of April 16,

1996, my decision to remand on this issue was not based solely on *Marcus* or its progeny. I found that the ALJ had ignored conflicting medical reports, some of which did provide a reasonable explanation of Lugo's pain, and had failed to explain why he credited some reports over others. I further found that the ALJ had mischaracterized Lugo's direct testimony about his physical abilities. I did not instruct the Commissioner, and I do not instruct her now, to accept Lugo's complaints of pain as conclusive proof of a disability. Instead, I simply directed the Commissioner to provide a more detailed explanation of her findings based on accurate and complete characterizations of the record.

As noted in petitioner's letter, the Commissioner's own regulation, Social Security Ruling 95–5p, 60 Fed.Reg. 55406–07 (1995), provides that:

> "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical evidence and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work...."

In this case, the ALJ did not provide such an analysis, and this omission can and should be addressed on remand.

Having thus reconsidered my earlier Order, I affirm my decision to remand this case for further consideration of all issues discussed therein, including Lugo's complaints of pain.

**SO ORDERED.**