732 F.2d 1089
 5 Soc.Sec.Rep.Ser. 72, Unempl.Ins.Rep. CCH 15,283
James KEITH, Plaintiff-Appellant,
v.
Margaret HECKLER, as Secretary of the United States
Department of Health and Human Services, Defendant-Appellee.
 No. 1076, Docket 84-6008.
 United States Court of Appeals,
Second Circuit.
 Argued April 4, 1984.
Decided April 16, 1984.
 
 Janice S. Robinson, Kalman Finkel, Morton B. Dicker, Marshal Green, The Legal Aid Society, Civil Div., New York City, and John Kirklin and Nancy Morawetz, Civil Appeals Law Reform Unit, New York City, for plaintiff-appellant.
 Janice Siegel, Asst. U.S. Atty., E.D.N.Y., Raymond J. Dearie, U.S. Atty., E.D.N.Y., and Robert L. Begleiter, Asst. U.S. Atty., Brooklyn, N.Y., for defendant-appellee.
 Before FEINBERG, Chief Judge, and FRIENDLY and OAKES, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 James Keith appeals from an order of Judge Glasser in the District Court for the Eastern District Court of New York, which granted a motion by the Secretary of Health and Human Services (the Secretary) under Fed.R.Civ.P. 12(c) to dismiss his action to set aside the Secretary's denial of his claims for the establishment of a period of disability, 42 U.S.C. Sec. 416(i), disability insurance benefits, 42 U.S.C. Sec. 423(a), and supplemental security income, 42 U.S.C. Sec. 1381a. Following a practice previously used in Chico v. Schweiker, 710 F.2d 947, 948 (2 Cir.1983), for the reasons stated therein, we shall generally refer to Keith's application as one for disability insurance benefits and will cite only the statutes and regulations pertaining to such benefits.
 
 
 2
 Keith, now approaching sixty years of age, was born in South Carolina and has obtained a seventh grade education. Keith currently lives with his wife in Brooklyn, New York; their two grown children live on their own and are not dependent. For eleven years he worked as a rigger for the Seatrain Shipbuilding Corporation at the Brooklyn Navy Yard until April 27, 1980 when, according to Keith, it went out of business. Prior to his employment as a rigger, he was employed as a machine operator at a Brillo soap factory for three and one-half years. His application for disability benefits was originally predicated on hypertension, gout, arthritis and dizziness. By the time of the hearing before the Administrative Law Judge (ALJ), this list had expanded so as also to include high blood pressure, chronic bronchitis, pulmonary emphysema and dyspepsia. A final decision of the Secretary denied Keith's application on the ground that he was not disabled under the Social Security Act and applicable regulations promulgated thereunder.
 
 
 3
 The proceedings on Keith's applications followed a well trod path. His initial applications, both dated February 10, 1981, were denied initially on March 31, 1981, on the basis of the finding of the disability examiner that "[t]here is no evidence of a severe impairment at this time" as required by 20 C.F.R. Sec. 404.1520(c).[1] On April 13, Keith requested reconsideration on the basis that his "condition is severe enough to prevent [him] from working"; apparently he was complaining of a painful left shoulder and hypertension. He did not submit any new evidence. This request was denied on June 2, 1981, on a finding of another disability examiner, after reviewing the initial applications and the new allegations, that Keith's impairments "have no major impact on work related activities".
 
 
 4
 Keith requested a hearing before an ALJ, who conducted a de novo hearing. During the hearing the ALJ received and made part of the record sixteen exhibits relating to Keith's medical and employment history. Accompanied by counsel, Keith was the only witness to testify. At the close of the hearing, the ALJ left the record open for an additional sixty days to allow Keith to submit further evidence; none was submitted. Keith does not contend that the ALJ did not properly perform his duty to develop the case.
 
 
 5
 Keith recited his employment history[2] and explained that he stopped working as a rigger in April, 1980, because "[w]ell one thing it [the Seatrain Shipbuilding Corporation] went out of business and they moved, actually in other words they went out of business." Keith said that he was forced to take days off due to illness during the last months of his job at the shipyard. He had tried to find a job since but was unsuccessful because of his alleged inability to work. He complained of having hypertension and experiencing dizziness, headaches and shortness of breath. He testified that when he bends, his blood goes to his head, and that when he walks or otherwise moves fast, he gets dizzy. He stated that his frequent headaches often require that he remain still and quiet for an hour at a time. In addition, Keith related that he had arthritis in his left shoulder and that, several times a month, gout caused his feet to swell.[3]
 
 
 6
 Keith's daily life, although doubtless a far cry from his robust days at the shipyard, is not inactive. Most of the time he reaches his sixth floor apartment by walking up the stairs; like that of all too many urban housing developments the building's elevator seems to be in chronic disrepair. His average daily activities include helping his wife in taking care of the apartment and going to the store on errands. When at home, he spends much of his time watching television or listening to radio. If the weather permits, he enjoys sitting on a bench outside of his home. Keith also attends physical therapy sessions for his left arm and shoulder at the Veterans Administration. He also testified that despite his gout he is able to stand about an hour at a time and walk a mile or two.
 
 
 7
 The ALJ considered a substantial amount of medical evidence in conjunction with Keith's testimony. Dr. David Strassberg and Dr. Martin Jaffee, of Mobile Health Care, had examined Keith on March 2, 1981 and filed a report. The doctors confirmed that Keith had hypertension and was taking medication for this condition; they noted also that Keith had a history of gout and arthritis, but made no specific clinical findings with respect to the latter ailments. The doctors also recorded a number of normal findings including neurological ("Muscle strength is good.") and musculoskeletal functions ("There is a full range of motion of all major joints .... The patient is able to make a full fist without difficulty."). The doctors administered a treadmill test with respect to Keith's heart. The resting EKG was normal; the posthyperventilation and deep breath tracings revealed no significant changes. Although the test was stopped after two minutes of exercise because Keith complained of shortness of breath, the doctors reported that the two-minute and six-minute post exercise tracings revealed no significant changes.
 
 
 8
 The doctors' report also noted Keith's ability to exert himself physically. The doctors concluded that Keith, in an eight hour day, can sit, stand and walk, each for six hours. He can frequently carry up to ten pounds, and occasionally carry up to twenty and up to fifty pounds. He occasionally can lift up to ten and up to twenty pounds. Bending, squatting, crawling and climbing can also be done occasionally. For repetitive actions, Keith can use both hands for grasping, pushing/pulling and fine manipulations.
 
 
 9
 In an H.S. Systems, Inc. report dated February 5, 1981, a physician, whose signature is illegible, stated that Keith's hypertension is "uncontrolled". The report contained no findings as to the effect such hypertension would have on Keith's ability to work; it listed all other findings as normal or negative.
 
 
 10
 The ALJ also considered medical records submitted by Keith. Records from Cumberland Hospital, covering a period from August 26, 1980 to May 5, 1981, state that Keith has hypertension, with high blood pressure readings taken at various dates. In September, 1980 the planned treatment included medication and a low salt diet. On May 5, 1981, the record states that Keith's hypertension was "fairly controlled". Keith's records from the Veterans Administration Outpatient Clinic also document a hypertension condition. These records acknowledge that Keith has been treated intermittently for calcific bursitis of the left shoulder.
 
 
 11
 In his decision of January 27, 1982, the ALJ first determined that
 
 
 12
 [t]he medically documented and orally proven physical or mental impairments are not severe and do not significantly limit [Keith's] ability to perform basic work related functions other than a heavy level of work activity. Due to the absence of severe impairments [Keith] must be found not under a disability without consideration of any vocational factors
 
 
 13
 as required by 20 C.F.R. Sec. 404.1520(c).[4] However, the ALJ did not rest upon this but proceeded to undertake the analysis required by Sec. 404.1520,[5] as if Keith had established that he had a "severe impairment". In this regard, the ALJ found that Keith
 
 
 14
 may not have the residual functional capacity to perform the physical and mental demands of past relevant work as a rigger, because of not being able to perform the significant physical functions which were required, such as lifting, handling, carrying, pushing, and pulling. [Keith] does not have an impairment restricting his ability to lift as much as 50 pounds, grasp, manipulate, see, hear, speak or understand, to carry out and remember instructions, to respond to supervision or to relate with co-workers and withstand customary work pressures. The past work as a machine operator, car cleaner, odd job man, warehouse worker all required functional abilities that [Keith] still retains.
 
 
 15
 Thus, under 20 C.F.R. Sec. 404.1520(e), Keith was not entitled to be found disabled. Lastly, the ALJ found that Keithcan communicate well; can understand and carry out instructions, can respond to supervision and withstand work pressures; can read and write to a fair degree and has the ability to perform a light level of work activity.[6]
 
 
 16
 Accordingly, the ALJ noted, after taking "administrative notice" and using common sense, that Keith had the skill and the ability to perform the duties of a host of jobs, including night watchman, service station attendant, hospital orderly and shipping clerk. The ALJ commented that "[b]oth the existence of these [types of] jobs and the minimal expertise required to perform them are relatively indisputable, not debatable and are well known to all." For all of the above reasons, he found that Keith was not disabled within the meaning of the Social Security Act and was not entitled to benefits.
 
 
 17
 On March 5, 1982, Keith filed a request for review of the ALJ's decision by the Appeals Council. The Appeals Council, on June 25, 1982, denied the request for review and provided that the ALJ's decision would stand as the Secretary's final decision; Keith thereafter sought review in the district court, resulting in a judgment holding that the Secretary's decision was supported by substantial evidence and dismissing the complaint as set forth above. This appeal followed.
 
 DISCUSSION
 
 18
 Keith asks us to decide an issue we left open in Chico v. Schweiker, supra, 710 F.2d at 952-53, namely, whether the Secretary's severity regulation, 20 C.F.R. Sec. 404.1520(c), on its face and as applied is inconsistent with and in violation of the Social Security Act, particularly 42 U.S.C. Sec. 423(d)(2)(A). In addition, Keith argues that the Secretary's decision that he is not suffering from a severe impairment is not supported by substantial evidence.[7]
 
 
 19
 In Chico we characterized the validity of the severity regulation as "a close question", 710 F.2d at 953. We continue so to regard it. We find it rather surprising that the Secretary should again cite Lofton v. Schweiker, 653 F.2d 215 (5 Cir.), cert. denied, 454 U.S. 1089, 102 S.Ct. 651, 70 L.Ed.2d 626 (1981), and Goodermote v. Secretary of Health & Human Services, 690 F.2d 5 (1 Cir.1982), as supporting the validity of the regulation after our Chico opinion, also cited by the Government, had carefully explained their inappositeness, 710 F.2d at 952-53. The only new authority cited by the Secretary, Anderson v. Schweiker, 651 F.2d 306 (5 Cir.1981), is even less in point. The Secretary has advanced a new argument to the effect that even if the severity regulation violated Sec. 423(d)(2)(A), it is consistent with Sec. 423(d)(1)(A), but, to say the least, this leaves the issue problematic. Nearly three years have passed since the Secretary advised the Fifth Circuit, see Lofton v. Schweiker, supra, 653 F.2d at 217 n. 1, that, in light of other provisions of the regulations, the value of the severity regulation was questionable and that the Secretary was considering its revision. We earnestly suggest that this consideration be brought to a head before an ALJ less solicitous of a claimant should rest decision solely on the severity regulation and some court of appeals should overturn it, with resulting possibilities of large scale interim disorder even if the Supreme Court should ultimately decide the issue in the Secretary's favor.
 
 
 20
 However, this case, like Chico, is not one where we are obliged to bite the bullet. Notwithstanding his ruling that the severity regulation mandated that Keith be found not disabled, the ALJ went on to apply the sequential analysis prescribed by the Secretary's regulation, Sec. 404.1520, which necessarily takes into account the factors specified in 42 U.S.C. Sec. 423(d)(2)(A), and found that Keith was not disabled because he was able to do his past relevant work as a soap machine operator. See Sec. 404.1520(e). Under the scope of review specified in 42 U.S.C. Sec. 405(g), we conclude that the Secretary's decision to that effect is supported by substantial evidence.
 
 
 21
 Under Sec. 404.1520(e), a claimant who has the residual functional capacity to perform past relevant work, defined in Sec. 404.1565(a) as work done within the last fifteen years, will be denied benefits. Section 404.1545 provides that this "residual functional capacity for work activity on a regular and continuing basis" be determined by measuring physical abilities ("walking, standing, lifting, carrying, pushing, pulling, reaching, [and] handling"), mental abilities ("to understand, to carry out and remember instructions, and to respond appropriately to supervision, co-workers, and work pressures"), and medical difficulties such as "impairments of vision, hearing, and other senses". Thus, the issue becomes whether Keith was capable of returning to work as a soap machine operator.
 
 
 22
 The ALJ, following the recommended procedure set forth in Sec. 404.1565(b), specifically questioned Keith with respect to his work as a soap machine operator. Although the colloquy was brief, it is apparent that the ALJ was properly satisfied that the job required a minimal level of physical exertion.[8] Both the examining physicians' report and Keith's own testimony support the ALJ's finding that he retains the functional abilities to work as a soap machine operator. The doctors' report confirms that Keith has the residual functional capacity to do the job. He can frequently carry up to ten pounds and occasionally up to fifty pounds; he can occasionally lift up to twenty pounds (indeed, Keith testified he could carry or lift as much as fifty pounds); he is fully capable of using his hands for grasping, pushing/pulling and fine manipulations and can sit, stand and walk each for six hours in an eight hour period. Keith's testimony that he performed household chores such as vacuuming and about his toilsome hikes up and down the stairs to his apartment presented additional evidence of a considerable degree of physical strength. The ALJ noted, in fact, that Keith was a "large, strong looking man, in no distress". Although Keith was being treated for an arthritic left shoulder, and despite his testimony that the condition was painful and limited his movement, the ALJ found that he "exhibited movement of his left arm, had no great limits and ... testified that he could still lift 50 pounds or so with his left hand." In light of Keith's apparent contradictory statements, perhaps explained in part by the success of the therapy treatments he was receiving at the Veterans Administration, we find no reason to question the ALJ's finding that Keith's arthritis would not prevent him from being able to operate a soap machine. We recognize that such a job entails a certain amount of physical dexterity, but the administrative record contains substantial evidence that Keith retains, at a minimum, the requisite capability.[9] The ALJ was well justified in having the impression that the trouble was not Keith's inability to work but inability to find work that he can do. However unfortunate this may be, the Ninetieth Congress specifically ruled this out as a ground for disability benefits when it enacted in 1967 what is now 42 U.S.C. Sec. 423(d)(2)(A), see Chico, supra, 710 F.2d at 948-49.
 
 
 23
 Affirmed.
 
 
 
 [1]
 The examiner's report described Keith's condition and thus concluded:
 [Keith] has applied for disability based on allegations of hypertension, arthritis, and gout.
 His current blood pressure is 190/120. However, there is no evidence of any end organ damage. Fundi are negative, there is no evidence of congestive heart failure, and there is no evidence of any peripheral neuropathy nor circulation difficulties. Muscle strength is good. He has a full range of motion of all major joints. His dexterity is normal. He is able to make a full fist without difficulty and there is no abnormality noted in his gait. He state[s] he gets short of breath on walking one mile, however, the chest is clear. There is no evidence of a severe impairment at this time.
 Therefore, this claim is denied.
 
 
 [2]
 Prior to his jobs as a rigger and as operator of a machine at a Brillo soap factory, Keith had held a variety of other jobs, including that of a car cleaner for the Long Island Railroad. During World War II, he was a warehouseman for the Army
 
 
 [3]
 Keith has received an arsenal of prescribed medication for his ailments which include Esidrix for swollen feet, Indocin for arthritis, Aldomet for high blood pressure and hydrocholothiazide for headaches
 
 
 [4]
 Section 404.1520(c) provides:
 You must have a severe impairment. If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience ....
 This "severity regulation" is supplemented by 20 C.F.R. Sec. 404.1521 which provides:
 What we mean by an impairment that is not severe.
 (a) Non-severe impairment. An impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities.
 (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs.
 Examples of these include--
 (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
 (2) Capacities for seeing, hearing, and speaking;
 (3) Understanding, carrying out, and remembering simple instructions;
 (4) Use of judgment;
 (5) Responding appropriately to supervision, co-workers and usual work situations; and
 (6) Dealing with changes in a routine work setting.
 
 
 [5]
 This is set forth in Chico v. Schweiker, 710 F.2d 947, 950 (2 Cir.1983), and countless other cases and will not be repeated here
 
 
 [6]
 We do not view this portion of the ALJ's decision as relying on the technical definitional requirements of the Secretary's medical-vocational guidelines which are keyed to physical capacity to work and are commonly referred to as the "Grid". If the Grid for light work, 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2, were applicable to Keith, he would qualify as disabled under Sec. 202.00(c) in light of his advanced age and lack of transferable job skills. Nevertheless, the ALJ could not have applied this regulation given his finding that Keith remained able to perform "vocationally relevant past work", i.e., soap machine operator. Thus, the ALJ must be taken as merely stating the obvious--given Keith's physical condition, he would have little difficulty in performing a number of jobs that did not require a heavy level of physical exertion
 
 
 [7]
 We view this latter issue broadly as whether the Secretary's decision that Keith is not entitled to disability benefits under the Social Security Act is supported by substantial evidence
 
 
 [8]
 The discussion proceeded as follows:
 What job did you do before?
 I worked at Brillow [sic], where they make soap pads.
 And what did you do at Brillow [sic]?
 Operate a soap machine.
 Could you describe what that entailed?
 Well you surround all of wool--we call it wool--and puts it on the machine, and runs it through and cuts it into soap pads. And I have to see that the soap pads have enough soap in them.
 The Department of Labor describes the requirements of an operator of a steel wool machine as follows:
 Sets up and operates machine that automatically shaves steel wires to form steel wool: Installs specified cutting tools in machine toolholder, using handtools. Turns controls to adjust speed and depth of cut according to cutting specifications. Starts machine and threads wire stock through automatic feed mechanism. Places cut ribbons of wire (steel wool) on machine rollers which carry them to catch basin. Ties broken ribbons. Replaces worn tools to maintain product quality. May operate steel wool balling, padding, and polyethylene extruding machines to produce soap-impregnated steel wool pads and polyethylene foam-backed, soap-impregnated steel wool pads.
 U.S. Employment Service, U.S. Dep't of Labor, Dictionary of Occupational Titles 506 (4th ed. 1977).
 The Department of Labor classifies the physical demands required for this job as "L4", i.e., "light work" which entails a certain amount of "reaching, handling, fingering, and/or feeling." U.S. Employment Service, U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles 115 (1981). Light work is defined as
 [l]ifting 20 lbs. maximum with frequent lifting and/or carrying of objects weighing up to 10 lbs. Even though the weight lifted may be only a negligible amount, a job is in this category when it requires walking or standing to a significant degree, or when it involves sitting most of the time with a degree of pushing and pulling of arm and/or leg controls.
 Id. at 465. Reaching, handling, etc., are described:
 (1) Reaching: Extending the hands and arms in any direction.
 (2) Handling: Seizing, holding, grasping, turning, or otherwise working with the hand or hands (fingering not involved).
 (3) Fingering: Picking, pinching, or otherwise working with the fingers primarily (rather than with the whole hand or arm as in handling).
 (4) Feeling: Perceiving such attributes of objects and materials as size, shape, temperature, or texture, by means of receptors in the skin, particularly those of the fingertips.
 Id. at 466.
 
 
 [9]
 The Secretary urges as an alternative ground that the ALJ found implicitly that Keith was able to do "medium" work, as defined in 20 C.F.R. Sec. 404.1567(c), and thus was not entitled to disability under the applicable Grid, 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 3, Sec. 203.11. Although we need not decide the question, we find this a less solid basis for affirmance
 The Secretary may be on sound ground in arguing that the ALJ's finding that Keith's impairments "do not significantly limit [his] ability to perform basic work related functions other than a heavy level of work activity" can be taken as finding that Keith could perform the next level of work activity, "medium" work, which involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," Sec. 404.1567(c). It is questionable, however, whether such an implied finding would be supported by substantial evidence. The examining physicians' report stated that Keith could carry up to 10 pounds frequently, and up to 50 pounds occasionally and that he could lift up to 20 pounds occasionally. We find nothing in the record to establish that Keith can frequently lift or carry up to 25 pounds, as would be required under Sec. 404.1567(c).