**Armand ROMERO, Plaintiff,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant.**

**No. 83 Civ. 6429 (MP).**

United States District Court, S.D. New York.

May 23, 1984.

The Legal Aid Society by Olive L. Clark, Conrad A. Johnson, New York City, for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Frederick M. Lawrence, Annette Blum, Gail Mancher, New York City, for defendant.

OPINION

MILTON POLLACK, Senior District Judge.

Plaintiff commenced this action, pursuant to the Social Security Act, 42 U.S.C. § 1383(c)(3), to obtain judicial review of a final decision by the Secretary of Health and Human Services, which determined that plaintiff's disability, which plaintiff established before the Social Security Administration ("SSA") in May 1980, had ceased in September 1982, and that therefore his entitlement to Supplemental Security Income ("SSI") benefits had ended in November 1982.

The parties have submitted cross motions for judgment on the pleadings pursuant to

Fed.R.Civ.P. 12(c). For the reasons set forth below, the Court grants plaintiff's motion and reverses the decision of the Secretary.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a fifty-seven-year-old Spanish speaking male with a two-year college education. He lives alone and has no relatives. He was determined to be disabled within the meaning of the Act in May 1980, due to a psychological disorder and a cardiac condition, and he accordingly began receiving SSI disability benefits at that time.

Plaintiff, according to evidence in the record, has not worked since some time prior to 1980. At the administrative hearing he was unable to recall when he last worked. He stated that his last job involved the writing of social programs.

In September 1982, SSA determined that plaintiff's medical condition had improved and was not disabling beginning in September 1982, and that his entitlement to SSI benefits had therefore ceased in November 1982.

At plaintiff's request, a *de novo* hearing before an Administrative Law Judge ("ALJ") was held to review this determination on January 26, 1983. Plaintiff was represented by an attorney at the hearing, and was the only person to testify.

On April 26, 1983, the ALJ issued a decision which again found that plaintiff's disability had ceased in September 1982. The decision stated:

The medical evidence establishes that beginning September 1982, the claimant did not have any impairment or impairments which significantly limited his ability to perform basic work activities; therefore, beginning in that month he did not have a severe impairment (20 C.F.R. 416.921).

Plaintiff requested a review of this determination by the SSA Appeals Council, which denied the request and left the ALJ's decision to stand as the final decision of the Secretary.

A transcript of the hearing, the documentary evidence contained in the administrative record, and the decision of the ALJ have been placed before the Court by way of the Secretary's answer.

Plaintiff's testimony at the ALJ hearing was disjointed, rambling, and seriously limited by his professed failures of memory—problems which plaintiff's attorney explained are a result of his psychological impairment. With respect to his psychological disorder, plaintiff testified he has been under the treatment of a psychiatrist on a regular basis, once every one to three weeks, for several years; that he perceives a force or power which drives him to do things, including attempts at suicide, against his will; that he locks himself up alone in his apartment for long periods of time because he is afraid of this force and its threat to his life; that he has difficulty remembering things and experiences headaches when he tries to remember; and that a drug he takes for this condition has a side effect of "doping" him and making him sleepy.

With respect to his heart condition, plaintiff testified that he has had a heart attack, has been hospitalized for his heart problem and receives outpatient treatment for the condition once every two months, and wears nitroglycerin patches and takes nitroglycerin pills as a treatment for this condition. He further stated that he is unable to walk for more than two blocks and has difficulty bending over, climbing stairs, and carrying a grocery bag, although he said he is able to utilize public transportation. Finally, he testified that while he can cook for himself and do some household chores, he is unable to do chores involving pushing or lifting and must leave such work to a woman who comes to his home to assist him.

The documentary evidence consisted of the following. First, a psychiatric medical report by the psychiatrist who has treated plaintiff since 1978, Dr. Sidney Lytton, prepared at SSA's request[1] and dated May 5,

1. In fact, the requests for medical opinions and the original decision to terminate were made by

1982, states that plaintiff's problems are paranoid thinking, loss of memory, and depression, that he "shows deterioration (organic) in psychological test", that he is "unable to function even in a sheltered workshop [and] becomes paranoid and suicidal", and that there is "little chance for significant improvement" in his condition. Dr. Lytton concluded that plaintiff has a "moderate" impairment of his abilities to comprehend and follow instructions, to perform work requiring minimal contact with others, and to perform simple tasks, and that he has a "severe" impairment of his abilities in the following areas: performing work requiring frequent contact with others, performing complex tasks, performing repetitive tasks, performing varied tasks, responding to supervision and customary work pressures in a routine work setting, and meeting production, quality, and attendance standards.[2]

Second, in a later report, apparently dated October 14, 1982, Dr. Lytton diagnosed plaintiff's condition as depression and latent schizophrenia and expressed the following findings: the impairment to plaintiff's ability to relate to other people is moderately severe to severe, the degree of deterioration of his personal habits is moderately severe, and the degree of constriction of interests is moderately severe to severe.

Third, a consultive report by a psychiatrist who saw plaintiff once, dated July 29, 1982, diagnosed plaintiff's condition as a "character disorder that affects his personal, social and occupational adjustments to some degree." This report concludes that the degree of limitation on plaintiff's ability to perform the following basic work functions on a sustained basis is "moderate": performing work requiring either frequent or minimal contact with others; performing simple, complex, repetitive, or varied tasks; responding to supervision and customary work pressure in a routine work setting; and meeting production, quality, and attendance standards.

Fourth, a report of a one-time consultive psychiatric examination, dated August 31, 1982, diagnosed plaintiff's condition as follows: "reactive depression with psychotic features in remission; personality disorder, dependent type." This report stated that plaintiff's ability to perform seven of nine basic work functions on a sustained basis is subject to a "moderate" limitation.

Fifth, a "mental capacities assessment" dated September 10, 1982, signed by R. LaPlaca, M.D., a *non-examining* review physician for the New York State Office of Disability Determinations, stated that plaintiff "can carry out [and] remember instructions, deal with work stress, work with others, [and] perform adequately on a sustained basis." Dr. LaPlaca filled out a one page "QED" form which concluded that plaintiff's total psychiatric impairment rating, on a scale of one (for normal) to five (most severe), was three.

Sixth, a report of a post-hearing consultive examination conducted on February 15, 1983, apparently at the request of the ALJ, concluded that plaintiff has "hysterical neurosis, conversion type, with mild depression." This report did not address plaintiff's ability to function in a work environment.

Seventh, a report of a social worker's visit to plaintiff's apartment on August 6, 1982, prepared at SSA's request, stated that "it is apparent that plaintiff is able to carry out the functions of food shopping, meal preparation, and cleaning the home quite well."

Eighth, a medical report concerning plaintiff's heart condition, prepared at the

the New York State Department of Social Services, Office of Disability Determinations. Since this state department in essence functions as an agency of SSA, this decision refers to its actions as those of SSA.

**2.** The SSA's questionnaire on which these ratings were reported defines a "moderate" impairment as one "which affects but does not preclude ability to function", and a "severe" impairment as one "which seriously affects ability to function." The form allows for no graduations between "severe" and "moderate" or beyond "severe".

request of SSA and dated August 3, 1982, indicates that plaintiff stated he had a myocardial infarction in 1981 and a second one in 1982, and that he was hospitalized for nine days in 1982. Based upon an examination and an electrocardiagram test, the report expresses the following impression regarding plaintiff's heart condition: (1) arteriosclerotic heart disease, status post myocardial infarction; (2) angina pectoris, moderate; (3) resting sinus tachycardia. The physician who made this examination also attempted a treadmill test of plaintiff—notwithstanding the fact that such test was medically improper given plaintiff's medications—but this was halted after less than one minute due to "dizziness, fatigue, and chest pain."

## II. THE SECRETARY'S DECISION PROCESS

■ The Secretary may terminate the payment of SSI disability benefits if she finds that the disability has ceased. 42 U.S.C. § 425. A disability may be found to have ceased when current evidence shows that the individual's medical condition has improved to a point where his medical impairments are no longer of such severity as to prevent him from engaging in any substantial gainful activity. *DeLeon v. Secretary of Health and Human Services*, slip op. 3723, at 3737 (2d Cir. May 16, 1984).

The regulations promulgated by the Secretary under which a claim of continuing disability is to be determined require a five-step evaluation process, as described by the Second Circuit:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secre-

tary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the plaintiff could perform. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982).

In the instant case, the ALJ never went beyond the second step of this prescribed analysis, and rested his decision solely on his conclusion that starting in September 1982 plaintiff no longer had any impairment or impairments which significantly limited his ability to perform basic work-related activities. The ALJ stated:

[W]hile there is no doubt that claimant suffers from discomfort, I am unable to find claimant's allegations of a severe impairment to be credible. In this particular case, the claimant has failed totally to establish existence of any severe medical impairment whatsoever. Any functional limitations that he may experience, have not been established to be on the basis of a medical impairment, but rather, based upon the evidence, are found to relate solely to age, which in and of itself cannot be considered a medical impairment.

## III. DISCUSSION

### The Lack of Substantial Evidence

■ The central question presented by this action is whether there was substantial evidence in the administrative record, considered as a whole, to support the ALJ's finding, adopted by the Secretary, that plaintiff did not suffer from any "severe impairment" as of September 1982.

The substantial evidence standard requires that the Secretary's decision be

founded on "more than a mere scintilla" of evidence and that it be based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). This standard is not met where the Secretary places "reliance ... on one portion of the evidence in disregard of overbalancing evidence to the contrary." *Memoli v. Califano*, 463 F.Supp. 578, 582 (S.D.N.Y.1978). *See also Weber v. Harris*, 640 F.2d 176, 178 (8th Cir.1981) ("the substantiality of evidence must take into account whatever in the record fairly detracts from its weight."); *Rivers v. Heckler*, 577 F.Supp. 766, 770 (S.D.N.Y.1984).

The critical regulations under which the ALJ's determination of non-disability must be scrutinized are 20 C.F.R. §§ 416.920(c) and 416.921, which explain and define the meaning of "severe impairment", the key term in step two of the five-step inquiry. Section 416.920(c) states:

*You must have a severe impairment.* If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

Section 416.921 states:

(a) *Non-severe impairment.* An impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities.

(b) *Basic work activities.* When we talk about basic work activities, we mean abilities and aptitude necessary to do most jobs. Examples of these include—

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

This "severity" regulation has been the subject of much litigation recently. The Second Circuit has twice in the last year left open the "close question" of whether the severity regulation is invalid on the ground that it provides for determining claimants to be not disabled without considering their age, education, and work experience, in seeming contradiction of the express terms of the Social Security Act. *Chico v. Schweiker*, 710 F.2d 947, 953 (2d Cir.1983); *Keith v. Heckler*, 732 F.2d 1089 at 1093, (2d Cir.1984).[3]

Other decisions, evincing a strong reluctance to allow the Secretary to terminate benefits at the second step of the five-step inquiry scheme, have given broad scope to the severity regulation's concept of what constitutes a "significant[ ] limit" on a claimant's abilities to do basic work activities. 20 C.F.R. § 416.921. In *Brady v. Heckler*, 724 F.2d 914 (11th Cir.1984), the Court carefully examined the administrative history of the current severity regulation and its predecessors, and reached the following conclusion as to its meaning:

An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

**3.** The Second Circuit stated in *Keith:*
Nearly three years have passed since the Secretary advised the Fifth Circuit ... that, in light of other provisions of the regulations, the value of the severity regulation was questionable and that the Secretary was considering its revision. We earnestly suggest that this consideration be brought to a head before

an ALJ less solicitous of a claimant should rest decision solely on the severity regulation and some court of appeals should overturn it, with resulting possibilities of large scale interior disorder even if the Supreme Court should ultimately decide the issue in the Secretary's favor.

*Id.* at 920. *See also McCullough v. Heckler,* 583 F.Supp. 934, 936 (N.D.Ill.1984) (the severity regulation "sets forth a purely *de minimis* requirement, excluding only the class of claimants described in an earlier version of the regulation as having 'slight abnormalities'"); *Jones v. Schweiker,* 551 F.Supp. 205, 208 (D.Md.1982) (medically caused limitations are significant, and therefore constitute a "severe impairment", so long as they are "not meaningless" and are "deserving to be considered").

Under the interpretation of the severity regulation set out in *Brady,* which this Court considers particularly appropriate in the light of the Second Circuit's doubts concerning the regulation's basic validity, it is clear that the Secretary's determination that plaintiff has no "severe impairment" as of September 1982 is not supported by substantial evidence.

Each of the psychiatrists who examined plaintiff and who addressed the question of his ability to perform basic work functions on a sustained basis found that he was at least moderately impaired with respect to at least seven of the nine basic functions listed on SSA's residual functional capacity questionnaires for mental impairments. Indeed, Dr. Lytton, who had treated plaintiff since 1978, concluded that plaintiff is *severely* impaired with respect to six of these nine functions.

The uncontroverted medical evidence in the record therefore establishes that plaintiff's psychological disorder is not merely a "slight abnormality", but is in fact a "severe impairment" within the meaning of the severity regulation.

Similarly, uncontradicted evidence in the record indicates that plaintiff has had heart attacks and suffers from a heart condition which in the doctor's office caused him dizziness, fatigue, and chest pain after less than a minute on a treadmill and which, according to his uncontroverted testimony, makes it difficult to walk for more than short distances, carry objects as light as a filled shopping bag, or perform various household chores. On this state of the record, it cannot be fairly concluded that plaintiff's heart condition is nothing more than a "slight abnormality".

Thus, the Secretary's decision is not supported by substantial evidence. The ALJ's contrary decision, which made no perceivable effort to analyze the effects of plaintiff's conditions on the various basic work functions set forth in the regulations, repeats analytic and administrative errors with which federal courts are now too familiar, as recently indicated by another court reviewing a non-severity determination:

> The importance of a proper administrative application of the severity test cannot be overstated in light of the increasing number of Social Security disability cases in which a finding of "not severe" forms the basis of the Secretary's decision denying or terminating benefits. A severity determination must take into account the criteria set out in 20 C.F.R. § 404.1521 [identical to § 416.921]. The findings and conclusions must be stated with sufficient particularity to enable meaningful judicial review.... Mere recitation of medical evidence, followed by the conclusory statement that a claimant's impairment does not significantly limit his ability to do basic work activities, will not satisfy the Secretary's obligation.

*Trafton v. Heckler,* 575 F.Supp. 742, 746 (D.Me.1983).

## *Improper Application of Legal Standards*

■ In addition to reaching a decision not supported by substantial evidence, the ALJ made serious errors in applying the relevant legal standards to the facts of this case. In particular, the Court finds he failed to apply the medical improvement standard, to consider the combination of plaintiff's impairments, and to give proper weight to the testimony of the treating physician. As recently set forth in *De-Leon, supra,* slip op. at 3736, each of these errors also constitutes an adequate ground for reversal.

## 1. Medical Improvement Standard.

Citing principles of fairness and administrative consistency, the Second Circuit held in *DeLeon* that the Secretary must apply the medical improvement standard in deciding whether to terminate benefits to an individual previously found to be disabled. *Id.* at 3739.

> Under this standard, the Secretary may terminate benefits to a person previously adjudged to be disabled only upon substantial evidence that the individual's condition has improved to the point that he or she is no longer disabled, or that the initial finding of disability was erroneous.

*Id.* at 3737.

> [H]aving once established that a particular condition is disabling a claimant is entitled to a presumption that as long as there is no change in the condition itself, or in the governing statutes or regulations, neither will the statutory classification of disability be changed.

Id. at 3738.

*DeLeon* makes clear that to rebut this presumption, the Secretary must adduce and compare evidence of plaintiff's condition at the time of the initial grant of benefits and the time of the supposed cessation of eligibility; unless this comparison "provides substantial support for finding the requisite medical improvement," *id.* at 3739, the presumption of continuing disability must prevail.

In the case before the Court, the Secretary has failed to meet this standard. Neither the evidence in the record nor the ALJ's decision provide any reasonable indication that there was a change for the better in plaintiff's condition between May 1980 and September 1982. Indeed, the record indicates that plaintiff's heart condition worsened during this period, during which plaintiff appears to have suffered two myocardial infarctions. Thus there is no substantial support for finding the requisite medical improvement.

■ 2. *Combination of Impairments.* *DeLeon* reiterated the well settled rule of this Circuit that "all complaints ... must be considered together in determining ... work capacity." *Id.* at 3739 (quoting *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 42 (2d Cir.1972).

In this case, plaintiff advanced evidence of two separate and distinct impairments, both of which had formed the basis of the original finding that he was disabled. Neither the ALJ nor the Secretary, however, analyzed these requirements in combination. As in *DeLeon,* for this reason too, the Court reverses the Secretary's decision.

■ 3. *Testimony of Treating Physician.* It is obvious from the ALJ's decision that he relied solely upon the evidence presented by consulting psychiatrists hired by the review agency—who at most saw plaintiff on only one occasion—when he determined that plaintiff's psychological disorder is not a severe impairment. He thus failed to give sufficient and proper weight to the expert opinion of Dr. Lytton, who had treated plaintiff on a regular and ongoing basis for several years.

Moreover, the ALJ offered no justification for this silent rejection of the treating psychiatrist's opinions. This course of decision-making contravened the holdings of innumerable cases in which courts have reversed administrative findings due to the factfinder's failure to give appropriate weight to the expert opinion of the treating physician, *e.g., DeLeon, supra,* slip op. at 3740; *Aubeuf v. Schweiker,* 649 F.2d 107, 112 (2d Cir.1981), and therefore constitutes a further ground for reversal.

## IV. CONCLUSION

While frequently a case in a posture such as this ought to be remanded for further proceedings before a new ALJ with respect to the steps in the decision-making sequence which the Secretary never reached, here the result which is warranted, in light of the multiple flaws in the Secretary's decision, is a reversal with a reinstatement of eligibility for benefits retroactive to the date of termination.

By holding that plaintiff need not endure the expense, frustration, and uncertainty of

further administrative proceedings, this decision negates the nettlesome difficulties which would accompany any attempt to relitigate in 1984 the state of plaintiff's mental and physical health in the fall of 1982. More importantly, this outcome accords to plaintiff the benefits of fairness and administrative consistency which, after *DeLeon,* become his due as a result of the Secretary's failure to meet the burden of the medical improvement standard.

Therefore, the Court reverses the decision of the Secretary and reinstates plaintiff as eligible for SSI benefits retroactive to the date of termination, November 1982.

SO ORDERED.