**Jesse GLOVER, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**No. 83 Civ. 3061 (WK).**

United States District Court, S.D. New York.

June 4, 1984.

White & Case by Joel M. Silverstein, New York City, for plaintiff.

Rudolph W. Gauliani, U.S. Atty., S.D. N.Y. by Kathleen A. Roberts, Asst. U.S. Atty., Southern District of New York, New York City, for defendant.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Plaintiff and defendant cross move for judgment on the pleadings in this action brought under §§ 1631(c)(3) and 205(g) of the Social Security Act, as amended, 42 U.S.C. § 1383(c)(3) and 405(g) (the "Act"), to review a final determination of the Secretary of the United States Department of Health and Human Services (the "Secretary") terminating plaintiff's Supplemental Security Income ("SSI") benefits. For the reasons which follow we grant plaintiff's motion and deny defendant's, thus reversing the Secretary's decision.

## BACKGROUND

In September 1979 plaintiff was found to be disabled due to osteoarthritis and glaucoma and received SSI benefits for her disability starting September 31 [sic] 1979 (Transcript ("Tr.") 11). On review the Secretary determined that such disability ended as of July 1982 and terminated plaintiff's benefits effective September 30, 1982

(Tr. 36). Plaintiff requested a hearing which was held on September 13, 1982 (Tr. 15–34). The Administrative Law Judge ("ALJ"), Irwin Bernstein, before whom plaintiff appeared, considered the case *de novo* and on December 30, 1982 found that plaintiff was not disabled (Tr. 9–13). The decision of the ALJ became the final decision of the Secretary when it was approved by the Appeals Council on March 18, 1983 (Tr. 3–4).

Plaintiff, a 62 year old woman, was raised on a farm in Alabama and attended school through the fourth grade. She married at age fourteen and had four children. In 1958 when she and her husband separated she secured her first and only job. From 1958 through 1969 plaintiff worked five days a week as a "shaker" in a laundry. She described her job as,

> [a] shaker's like I pull out very wet clothes and pull them and put them on a table and we need 2 girls, shake them out and then they take them to the iron for to press them.

(Tr. 21). The uncontradicted evidence established that this work required plaintiff to stand all day, for nine hours, to bend constantly, and to lift wet clothes weighing about 15 pounds (Tr. 21, 41). She stopped working in 1969 because, as she testified, she developed arthritis, swollen ankles, and calluses on the bottoms of her feet (Tr. 22, 91). Plaintiff never worked again.

At the hearing before the ALJ three reports from consulting physicians were presented. Although the physicians differed in their characterization of the severity of plaintiff's condition, their objective findings were uniform: plaintiff has degenerative arthritis and cannot stand or walk for prolonged periods, bend frequently, or lift more than twenty pounds. Dr. Herbert Cohen, while characterizing plaintiff's arthritis as "mild," stated that plaintiff's full capacity in an eight hour work day was to "sit for about a half hour; rest and repeat this in an 8 hour working day." (Tr. 75). Moreover, plaintiff could walk "about 3 to 4 blocks," and her bending, stooping and kneeling were "mildly restricted." (Tr. 75).

Dr. Peter Strassberg in his report noted "a decreased range of motion in the dorsal spine secondary to pain" as well as a "decreased range of motion of both knees and both ankles secondary to pain," (Tr. 100). He found full range of motion of all other joints. In a residual functional capacity evaluation Dr. Strassberg found that plaintiff could sit for up to eight hours, could stand for 2 hours, walk for two hours, and bend occasionally. (Tr. 103).

Dr. M. Srinivassan reported that flexing of plaintiff's lumbosacral spine was limited to ninety degrees, extension to twenty-five degrees and side bending to twenty degrees (Tr. 83). He noted that plaintiff was "suffering from early degenerative osteoarthritis of both knee joints, slightly more marked in the left knee." (Tr. 83). An X-ray report attached to his findings described a narrowing of both knee joints approaching 50% and bone spurs on the patellae and tibiae. Dr. Srinivassan stated that plaintiff's capacity was to walk ¾ of a mile, sit two hours, stand one hour, and lift up to twenty pounds (Tr. 83).

The record also includes several reports from Metropolitan Hospital's Orthopedic Clinic where plaintiff was examined every three months from February 1981 to May 1982. The first of these reports stated:

DJA [degenerative joint disease] of both knees X-Rays reveal marked arthritis of the pattelofemoral joints [the joint between patella (the knee cap) and the femur (the thigh bone) ].

(Tr. 70). A radiologist's report noted degenerative changes in the form of osteophtes (bone spurs) projecting from the surfaces of the bones forming plaintiff's knee joints. (Tr. 62).

The evidence presented at the hearing also indicated that plaintiff was suffering from glaucoma in both eyes. (Tr. 78–81).

## DISCUSSION

Plaintiff raises two grounds [1] for reversal, each of which involves an issue expressly left open by the Second Circuit and each of which we find persuasive.

### A. The Severity Regulation

Plaintiff argues first that the "severity regulation," 20 C.F.R. § 416.920(c) [404.-1520(c) ],[2] under which the ALJ determined that she was not disabled, is inconsistent with and in violation of the Act, particularly 42 U.S.C. § 1382c(a)(3)(B) [423(d)(2)(A) ]. Had a proper analysis been applied, plaintiff argues, she would have been found disabled.

The statutory definition of disability applicable to SSI cases is provided in 42 U.S.C. §§ 1382c(a)(3)(A) [423(d)(1)(A) ]:

An individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

The definition is clarified in 42 U.S.C. § 1382c(a)(3)(B) [423(d)(2)(A) ] which provides:

For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of

---

1. Plaintiff raises a third argument, that the Secretary failed to adequately develop the record which would, if successful, require remand. As we believe there are adequate grounds for reversal on plaintiff's other arguments, we do not address this issue.

2. As the statutory definition of "disability" applicable in SSI cases, 42 U.S.C. § 1382c(a)(3), is

identical to that applicable in Social Security Disability Insurance Benefits cases, 42 U.S.C. § 423(d), the vast case law interpreting the latter provision has been held applicable to the former. *Hankerson v. Harris* (2d Cir.1980) 636 F.2d 893, 895 n. 2. Accordingly, parallel citations to statutes and regulations relating to the latter will be given throughout in brackets.

substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Case law has established that the claimant bears the burden of proving that she is disabled. *Dumas v. Schweiker* (2d Cir. 1983) 712 F.2d 1545, 1550; *Aubeuf v. Schweiker* (2d Cir.1981) 649 F.2d 107, 111. However, once the claimant demonstrates that her impairment prevents her from returning to her previous work, the burden shifts to the Secretary to prove that plaintiff can, considering her age, education, and work experience, as well as her physical ability, perform other substantial work which exists in the national economy. *Dumas v. Schweiker*, 712 F.2d at 1550; *Aubeuf v. Schweiker*, 649 F.2d at 112; *Dousewicz v. Harris* (2d Cir.1981) 646 F.2d 771, 772; *Santiago v. Secretary of U.S. Dept. of Health and Human Services* (S.D.N.Y. 1982) 529 F.Supp. 469, 472.

Regulations promulgated by the Secretary provide a different analysis for determining disability. Under the regulations, 20 C.F.R. § 416.920 [404.1520], the Secretary first determines whether the claimant is currently engaged in substantial gainful activity. If she is not, the Secretary then considers whether the claimant has a "severe impairment." 20 C.F.R. § 416.920 provides:

> (c) You must have a severe impairment. If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

If the claimant suffers such an impairment the Secretary continues the analysis; if not, the inquiry ends.

█ It seems clear to us that the "severity regulation" conflicts squarely with 42 U.S.C. § 1382c(a)(3)(B) [§ 423(d)(2)(A)], which provides that if a person is unable to perform his or her past work, the Secretary will consider the claimant's age, education and work experience to determine whether he or she is able to perform other substantial gainful work which exists in the national economy.

The Second Circuit has commented on the questionable validity of the severity regulation, but has not yet ruled on the issue. *Keith v. Heckler*, 732 F.2d 1089 (2d Cir.1984); *Chico v. Schweiker* (2d Cir.1983) 710 F.2d 947. In *Chico* the court stated that it was not necessary

> to resolve what we consider to be a close question of the validity of the "severity" regulation, involving as it does a seeming conflict between the letter of § 423(d)(2)(A), on the one hand, and, on the other, the Secretary's understandable desire to supply, ... some threshold that a claimant must pass before the Social Security Administration is required either to apply the Appendix 2 guidelines or to call vocational experts.

710 F.2d at 953 (citation omitted). In *Keith*, the court suggested that the Secretary consider revising the regulation "before an ALJ less solicitous of a claimant should rest decision solely on the severity regulation and some court of appeals should overturn it, with resulting possibilities of large scale interior disorder." *Keith v. Heckler, supra*, 732 F.2d at 1093.

█ In the case at bar the ALJ based his decision solely on the questioned regulation (Tr. 12, 13). As we have found such regulation to be invalid, we reverse the decision. Furthermore, we think a remand for further consideration would be futile. If a proper analysis had been applied, plaintiff would have been found disabled. The evidence clearly establishes that plaintiff was unable to return to her previous employment. Although the ALJ made no ruling on this, any decision to the contrary would be wholly unsupported by substantial evidence. The next question in the statutory analysis is whether, considering her age, education, work experience, and physical ability, plaintiff can perform other substantial work. To answer this question the

Secretary may look to the medical vocational guidelines promulgated by the department. 20 C.F.R. at 404, subpt. P, app. 2 (1982). Under the guidelines and applicable regulations plaintiff is of "advanced age," 20 C.F.R. § 416.963 [404.1563], of "marginal education," 20 C.F.R. § 416.964 [404.1564], and has performed only "unskilled work," 20 C.F.R. § 416.968 [404.1568]. At most, given the residual functional capacity reports in the record, plaintiff can do "light work" as defined in 20 C.F.R. § 416.967 [404.1567]. Under the medical vocational guidelines, a person of these characteristics is considered disabled.

### B. The Medical Improvement Standard

■ The plaintiff next argues that because the ALJ failed to apply the "medical improvement" standard in terminating benefits to one who was previously found disabled, the decision of the Secretary should be reversed. At the time of the hearing, the Second Circuit had not yet ruled on the question of whether the Secretary may terminate benefits to a person previously adjudged to be disabled only upon substantial evidence that the individual's condition had improved to the point that he or she was no longer disabled or that the initial finding of disability had been erroneous. *See Delamater v. Schweiker* (2d Cir.1983) 721 F.2d 50, 54. The ALJ relied on the position that it was "not necessary for the claimant's impairment(s) to have improved for disability to be ceased" (Tr. 11) and did not consider whether the medical evidence demonstrated such an improvement. The Court of Appeals has now ruled directly on that issue. *De Leon v. Secretary of Health and Human Services*, 734 F.2d 930 (2d Cir.1984). In *De Leon*, the Court stated, "we hold that the Secretary must apply the medical improvement standard in deciding whether to terminate benefits to an individual previously found to be disabled." *Id.* at 936.

In the case before us there is not a shred of evidence that plaintiff's condition—created by degenerative osteoarthritis and glaucoma—has improved at all. A remand, therefore, would have no purpose, for any decision that there had been improvement could not be supported by substantial evidence.

### C. Remand

As the foregoing discussion indicates, we think a remand for further consideration on either issue would be futile. Section 405(g) of United States Code, Title 42 provides:

> The court shall have the power to enter... a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing... The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding...

If the Secretary has additional evidence which would meet the above requirements and justify a rehearing, we will consider a remand for such a purpose. To this end we will stay our decision for two weeks, during which time the Secretary may, if she be so advised, move for a remand to present new evidence. If no such motion is made, or if made, denied, the case will be remanded to the Secretary for the sole purpose of calculating benefits.

In summary, the decision of the Secretary is reversed. The Court will determine, after receiving any papers which the Secretary may submit, whether the case will be remanded for a rehearing, or whether the remand will be for the sole purpose of calculating benefits.

SO ORDERED.