**Pascual Padin GERENA, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

Civ. No. 84–2208 HL.

United States District Court,
D. Puerto Rico.

Sept. 12, 1985.

Rafael Carreras Valle, Río Piedras, P.R., for plaintiff.

Fidel A. Sevillano, U.S. Atty., Hato Rey, P.R., for defendant.

OPINION AND ORDER

LAFFITTE, District Judge.

This is an action brought under Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Secretary of Health and Human Services (the Secretary) denying plaintiff's application for disability insurance benefits.

Plaintiff is a 59 year old man with a marginal second grade education and previous work experience as a milkman, a job considered from medium to heavy and semi-skilled. Plaintiff claims he has been unable to work since April 15, 1982, be-

cause of chest pain, shortness of breath, anxiety, and high blood pressure. Plaintiff's application was denied throughout the administrative proceedings. The Secretary's final decision comes before us for a determination of whether it is supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

Plaintiff's treating physician, Dr. Prieto, filed two reports of patient's medical condition (Tr. 97–100, 101–107), dated December 23, 1982 and March 7, 1983, respectively, as well as a Medical Assessment of Ability to do Work-Related Activities, the only one on record. Both reports are consistent in finding arterial hypertension, dyspnea (shortness of breath), and normal EKG. The first report also found mild cardiomegaly (enlargment of the heart), calling patient's prognosis poor, while the second also found tachycardia, describing the condition as early manifestation of heart failure. Both reports assert the patient's inability to engage in physical exertion because it triggers dyspnea and/or tachycardia. Blood pressure ranged from 140/100 to 120/90. Patient was taking Tenormin and Centrax for these conditions and anxiety.

A consultative examination by Dr. Medina-Ruiz on January 8, 1983, revealed a normal EKG. Blood pressure was again high, 140/90, but there were no murmurs, gallops, or rubs. P.M.I. was at 5th ICS at MCL. Dr. Medina Ruiz' diagnosis was obesity, anxiety reaction, and high blood pressure (Tr. 108–109). However, the radiology examination report accompanying the consultative examination found a tortuous and sclerotic (hardened) aorta.

Plaintiff was admitted June 3, 1983, to De Diego Hospital, and discharged June 7 with an unstable angina pectoris and hypertension and complaints of chest pain. X-rays indicated the heart was not enlarged, but the aorta was hardened. The EKG revealed a sinus tachycardiac condition (more than 100 beats per minute), which was controlled by the time of discharge (Tr. 113–134).

Plaintiff's treating physician also submitted a Medical Assessment of Ability to do Work-related Activities. He placed the following restrictions: lift no more than 10 pounds, standing less than four hours, no carrying of heavy objects, walking only a short distance, limited bending, no pushing or pulling, no exposure to dust and fumes. The plaintiff was found unlimited only in seeing, hearing, and speaking.

■ The Secretary's regulations require that medical reports include medical assessments describing ability to do the work related activities referred to above, 20 C.F.R. 404.1513(b)(6) and (c)(1). *Cardona v. Secretary Of Health And Human Services*, 740 F.2d 952 (1st Cir., 1984). Though medical opinion is not conclusive on disability and that decision is for the Secretary to make, *Sitar v. Schweiker*, 671 F.2d 19 (1st Cir.1982), neither is the Secretary at liberty to simply ignore uncontroverted medical reports. *Suarez v. Secretary Of Health And Human Services*, 740 F.2d 1 (1st Cir. 1984).

■ The Administrative Law Judge (ALJ) decided the case explicitly on the severity requirement, step 2 of the disability determination procedure, Section 404.-1520(c). This determination is made in terms of limiting ability to do basic work related functions, Section 404.1521. If there is uncontroverted medical evidence that claimant cannot engage in work related activities, there cannot be made a determination of non-severity. And if the plaintiff proves he is unable to engage in his past relevant work activities, the burden shifts to the defendant to show jobs exist in significant numbers in the national economy for which the plaintiff is capable. *Torres v. Secretary Of Health And Human Services*, 677 F.2d 167, 168 (1982). We do not go so far as making that determination, step 4, here.

■ In the face of uncontroverted medical opinion that plaintiff could not engage in many basic work related activities, the ALJ acknowledged the importance of considering limitations in work related activi-

ties, then stated the principle that functional limitations must be medically determinable. (Tr. 21.) This is surely correct, as a description of the type of evidence to be submitted with disability claims, Section 404.1512(b), and as a general principle. Section 404.1508,1529. Either way it cannot be said there is substantial evidence to support the ALJ's finding.

Medical reports from all three sources found an organic dysfunction underlying the symptoms. Though not entirely congruent, the reports indicate there is something organically wrong with the plaintiff's heart. Some complex of hardening and twisting of the arteries, enlargement of the heart, or angina is causing the plaintiff shortness of breath, pain, and tachycardia. Given this uncontroverted medical opinion, that symptoms and medically determinable cause exist, both severe, the proper question is how much does this condition affect plaintiff's residual functional capacity, step 4 of the procedure.

In *Keith v. Heckler*, 732 F.2d 1089 (1st Cir.1984), the Court of Appeals explicitly adopted that ALJ's method of disability determination. Notwithstanding her ruling that the severity requirement mandated that Keith be found not disabled, she went on to apply step 4 of the disability determination procedure, ability to do former job, as a means of determining ability to do basic work related activities. It was determined that Keith, who suffered from hypertension and arthritis but could occasionally lift 50 pounds, could do his former job as a soap machine operator.

The situation of this plaintiff vis-a-vis his former work is distinguishable. Delivering milk is physically rigorous, medium to heavy work in the regulations, involving lifting heavy objects, constant walking, carrying, bending, and stooping. This is much to ask from a 59 year old man with a heart condition, who becomes short of breath with physical exertion or lifting of more than ten pounds.

■ If ability to do previous work may be used in support of non-disability determinations which are also independently de-

cided on non-severity grounds, the contrapositive is an even stronger case. If it is found that a claimant cannot do his previous work, specified basic work related activities, due to impairment, it must be found to constitute a severe impairment, in keeping with the definition of severe impairment in terms of ability to do work related activities, Section 404.1521.

It is not the function of judicial review to try the matter *de novo*. The above discussion of plaintiff's ability to do his previous work applies only insofar as it relates to the ALJ's finding that plaintiff's impairment is not severe and thus not disabled, in accordance with the analysis in *Keith*, and is not controlling on the ALJ's application of step 4 on remand.

WHEREFORE, this Court finds good cause to reverse the Secretary's finding that claimant does not have a severe impairment and to REMAND this case to the Secretary for further proceedings consistent with this opinion.

IT IS SO ORDERED.